**Opinion filed February 26, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-07-00232-CV

_____

## IN THE INTEREST OF Z.N.H., A CHILD

**On Appeal from the 326th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 29,195-C**

### O P I N I O N

Matthew Neal Hendrix appeals from the trial court's April 13, 2007 order granting Brenda Hendrix Smith's petition to modify the parent-child relationship. Matthew and Brenda are representing themselves pro se in this appeal.[1] We reverse and remand.

### Background

Brenda and Matthew are the parents of Z.N.H. Brenda and Matthew divorced on November 30, 1998. At that time, Z.N.H. was three years old. In the divorce decree, the trial court appointed Brenda as the sole managing conservator of Z.N.H. and Matthew as the possessory

---

[1]Matthew has filed an appellate brief and a supplemental brief. Brenda has not filed a brief. Instead, she has filed a two-paragraph letter in which she explained her position in this cause. In the letter, Brenda indicated that she would not be filing a further response.

conservator of Z.N.H. The decree provided that Brenda had the exclusive right to establish Z.N.H.'s primary residence.

On June 7, 2001, the trial court entered an agreed order modifying the parent-child relationship. The agreed order contained a geographical limitation provision that required Brenda to establish Z.N.H.'s primary residence in Taylor County, Texas. On February 27, 2002, the trial court entered a judgment nunc pro tunc that included the Taylor County geographical limitation provision.

In July 1999, Matthew married Dawn D. Hendrix. In May 2000, Brenda married Wayne Smith. At that time, Wayne was a professor at Hardin-Simmons University in Abilene, Texas. In February 2006, Hardin-Simmons denied tenure to Wayne. Wayne obtained a job with Argosy University in Dallas, and Brenda and Wayne purchased a house in Coppell, Texas. On July 19, 2006, Brenda informed Matthew that she and Wayne were moving.

Brenda wanted to establish Z.N.H.'s primary residence with her in Coppell, Texas. On July 28, 2006, Brenda filed a petition to modify the parent-child relationship. In the petition, she requested that the trial court lift the Taylor County geographical restriction in the judgment nunc pro tunc so that she could establish Z.N.H.'s primary residence outside Taylor County. Matthew represented himself pro se in the trial court proceedings. He filed a cross-petition and an amended cross-petition to modify the parent-child relationship. Matthew opposed Brenda's request to modify the geographical limitation. In part, he requested the trial court to appoint Brenda and him as joint managing conservators of Z.N.H. and to modify the judgment nunc pro tunc to provide that he would have the right to establish Z.N.H.'s primary residence in Taylor County, Texas.

On December 19, 2006, Brenda filed a motion for substitution of counsel. Brenda requested the trial court to permit Charles E. Myers to represent her in this cause. On the same day, the trial court entered an order substituting Myers as Brenda's attorney of record and discharging Brenda's former attorney of record.

On January 22, 2007, Matthew filed a motion to disqualify Myers from representing Brenda. In the motion, Matthew stated that, on July 20, 2006, he and his wife, Dawn, had consulted with Myers "regarding the facts of this case." He also stated that he and Dawn had spent about thirty-five to forty minutes with Myers and that they had shared "very personal information" with him. Matthew also stated that he had come very close to hiring Myers. Matthew asserted that his

2

consultation with Myers gave rise to a conflict of interest that disqualified Myers from representing Brenda. Following a hearing, the trial court denied Matthew's motion to disqualify Myers.

On March 5, 2008, this cause proceeded to a four-day jury trial. Myers represented Brenda at trial. The jury found in favor of Brenda on her claims and against Matthew on his claims. Based on the jury's verdict, the trial court entered an order granting the modification requested by Brenda and denying the modification requested by Matthew.

*Issues on Appeal*

Matthew presents seven issues for review in his brief. In his first issue, he asserts that the trial court abused its discretion in denying his motion to disqualify Myers. In his second through fifth issues, he attacks the legal and factual sufficiency of the evidence to support the trial court's removal of the geographical limitation provision. In his sixth issue, he contends that Brenda's counsel engaged in incurable jury argument. In his seventh issue, he contends that the cumulative effect of various errors in the trial court violated his Fourteenth Amendment rights.

*Matthew's Motion to Disqualify*

Matthew and Dawn testified at the hearing on the motion to disqualify. Matthew testified that, on July 19, 2006, he learned that Brenda had purchased a home in the Dallas area. Upon learning this information, Matthew scheduled an appointment with Myers at his office. Dawn testified that she and Matthew sought Myers's advice after they learned that Brenda had bought a house in the Dallas or Coppell area. Dawn said that, on July 20, 2006, she and Matthew visited with Myers for about forty-five minutes. During the visit, Dawn and Matthew talked with Myers about retaining his services. Dawn said that the purpose of the meeting with Myers was to stop Brenda from taking Z.N.H. away. Dawn testified that she shared personal information with Myers about her life, Matthew's life, Z.N.H.'s life, and Z.N.H. moving away to Dallas. Matthew testified that he and Dawn shared court information and personal information with Myers. Matthew said that he showed Myers a letter he had written to Brenda when he learned that Wayne had taken the job in Dallas. Matthew also said that Myers looked at the geographical restriction during the consultation. Matthew testified that he talked with Myers about "a temporary hearing for an injunction or to enforce the current orders."

Dawn and Matthew testified that Myers gave them a copy of a contract for services. Matthew said that Myers told him a $3,500 retainer would be required for a temporary hearing. Dawn and Matthew said that they were going to try to come up with the money to retain Myers. Matthew

3

testified that he decided he would get back with Myers at a later date. Ultimately, Matthew did not retain Myers.

Myers testified that his records indicated that he met with someone by the name of "Matt Hendrix" on July 20. Myers said that seeing Matthew and Dawn in court did not "jog [his] memory" about the meeting and that he did not recognize them. He said that he did not remember anything about the conversation that he had with Matthew and Dawn. Myers also testified that he would have voluntarily withdrawn from representing Brenda if he had had any recollection of talking to Matthew or the matters that they talked about.

At the conclusion of the evidence, the trial court stated that Myers had "an outstanding reputation for completely ethical behavior." The trial court announced its ruling:

> And based on [Myers's] representations to the Court and to you, Mr. Hendrix, he really has no independent recollection of any of the facts of the case, and the only specific matters that have been mentioned are matters that are of record that he could have found in the Court file, regardless of any discussion with you. I'm going to deny your motion.

The trial court informed Myers that he would have an obligation to withdraw if at some point he remembered details about his meeting with Matthew and Dawn.

We review the trial court's denial of a motion to disqualify under an abuse of discretion standard. *Nat'l Med. Enters., Inc. v. Godbey*, 924 S.W.2d 123, 132 (Tex. 1996); *Metro. Life Ins. Co. v. Syntek Fin. Corp.*, 881 S.W.2d 319, 321 (Tex. 1994). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles or acted in an arbitrary or unreasonable manner. *Metro. Life Ins. Co.*, 881 S.W.2d at 321.

The Texas Disciplinary Rules of Professional Conduct[2] serve as guidelines for the courts when considering motions to disqualify. *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002). TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09 provides in relevant part:

> (a) Without prior consent, a lawyer who personally has formally represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:

> (3) if it is the same or a substantially related matter.

---

[2] *See* TEX. DISCIPLINARY R. PROF'L CONDUCT *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 2005) (TEX. STATE BAR R. art. X, § 9).

Rule 1.09(a)(3) prohibited Myers from representing Brenda against Matthew if (1) Matthew was his former client and (2) his representation of Brenda against Matthew was in the same or a substantially related matter.

The term "client" is not defined in the Disciplinary Rules. TEX. R. EVID. 503(a)(1) defines "client" as "a person . . . who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from that lawyer." The evidence established that Matthew consulted Myers with a view to obtaining professional legal services from Myers. Therefore, Matthew was Myers's former client under the definition set forth in Rule 503(a)(1). The evidence also established that Matthew consulted Meyers about a matter involving the geographical limitation provision that required Brenda to establish Z.N.H.'s primary residence in Taylor County, Texas. Myers's representation of Brenda involved the same matter. Rule 1.09(a)(3) prohibited Myers from representing Brenda in this matter.

In denying Matthew's motion, the trial court relied on Myers's testimony that he had no recollection of his meeting with Matthew and Dawn. The trial court also relied on a lack of evidence that Matthew and Dawn had disclosed to Myers any specific matters that could not be found in the court's file. However, once Matthew met his evidentiary burden of showing that Myers's representation of Brenda violated Rule 1.09(a)(3), Matthew was entitled to a conclusive presumption that he and Dawn imparted confidences and secrets to Myers. *NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 400 (Tex. 1989); *Cimarron Agric., Ltd. v. Guitar Holding Co., L.P.*, 209 S.W.3d 197, 202 (Tex. App.—El Paso 2006, no pet.). As such, in making its ruling, the trial court should not have considered Myers's lack of recollection of the meeting and a lack of evidence of the disclosure of any specific matters that could not be found in the court's file.

The trial court abused its discretion in denying Matthew's motion to disqualify Myers. Matthew is entitled to a new trial. We sustain Matthew's first issue.

*Sufficiency of the Evidence*

In his second through fifth issues, Matthew challenges the legal and factual sufficiency of the evidence to support the trial court's removal of the geographical limitation provision from the judgment nunc pro tunc. Specifically, Matthew contends that the evidence was legally and factually insufficient to establish that removing the geographical restriction was in Z.N.H.'s best interest.

We review a trial court's order modifying conservatorship under an abuse of discretion standard. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Child v. Leverton*, 210 S.W.3d 694, 695 (Tex. App.—Eastland 2006, no pet.). However, a jury's findings underlying a conservatorship decision are subject to ordinary legal and factual sufficiency review. *Alexander v. Rogers*, 247 S.W.3d 757, 761 (Tex. App.—Dallas 2008, no pet.). We must address Matthew's legal sufficiency issues because sustaining these challenges would result in a rendition of judgment for him. *See Christus St. Mary Hosp. v. O'Banion*, 227 S.W.3d 868, 873 (Tex. App.—Beaumont 2007, pet. denied). Based on our ruling on Matthew's first issue, we need not address Matthew's factual sufficiency issues because they are not necessary to the disposition of this appeal. TEX. R. APP. P. 47.1.

The jury found that it was in Z.N.H.'s best interest to lift the Taylor County geographical restriction. In analyzing a legal sufficiency challenge, we must determine whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We must review the evidence in the light most favorable to the verdict, crediting any favorable evidence if a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not. *Id.* at 821-22, 827. We may sustain a no-evidence or legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810 (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEXAS L. REV. 361, 362-63 (1960)).

A trial court may modify an order that provides for the terms and conditions of conservatorship if (1) modification would be in the best interest of the child and (2) the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the date of rendition of the order. TEX. FAM. CODE ANN. § 156.101(1)(A) (Vernon 2008). Brenda sought to modify the geographical limitation provision in the trial court's February 27, 2002 judgment nunc pro tunc. A judgment nunc pro tunc relates to the date of the original judgment and is effective as of the earlier date. *Home Indem. Co. v. Muncy*, 449 S.W.2d 312, 315-16 (Tex. Civ. App.—Tyler 1969, writ ref'd n.r.e.). In this case, the trial court's

6

judgment nunc pro tunc was effective June 7, 2001, the date of the original order containing the geographical limitation provision. Under Section 156.101(1)(A), Brenda had the burden to prove (1) that lifting the geographical limitation provision was in Z.N.H.'s best interest and (2) that there had been a material and substantial change in Z.N.H.'s circumstances, her circumstances, Matthew's circumstances, or the circumstances of another party affected by the order since June 7, 2001. Matthew does not challenge the sufficiency of the evidence to support a finding that Brenda's circumstances had materially and substantially changed since June 7, 2001.

The best interest of the child is the primary consideration of the court in determining conservatorship and possession issues. TEX. FAM. CODE ANN. § 153.002 (Vernon 2008); *Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002). The Texas Supreme Court in *Lenz* considered the following factors when addressing the best interest of the child in the context of a relocation case: (1) the relationship with and presence of extended family; (2) the presence of friends; (3) the presence of a stable and supportive environment; (4) the custodial parent's improved financial situation and ability to provide a better standard of living for the children; (5) positive impact on the custodial parent's emotional and mental state, with beneficial results to the children; (6) the noncustodial parent's right to have regular and meaningful contact; (7) the ability of the noncustodial parent to relocate; and (8) the ability of the noncustodial parent to adapt his work schedule to his children. 79 S.W.3d at 15-19.

Thirty-five witnesses testified at trial. Brenda testified that she was Z.N.H.'s sole managing conservator. At the time of trial, Z.N.H. was eleven years old. He was in the fifth grade at Austin Elementary School in Abilene, Texas. Z.N.H. had lived with Brenda since the date of her divorce from Matthew. Brenda presented evidence that she had provided Z.N.H. with a stable home life. At the time of trial, Brenda and Z.N.H. lived with one of Brenda's friends at a house in Abilene. Brenda and Wayne had purchased a house in Coppell, Texas, so that Wayne could be close to his job with Argosy University. Brenda said that the house in Coppell was about three hours and twenty minutes away from Matthew's house. She also said that the Coppell house was in a very safe and beautiful area. The evidence showed that Z.N.H. had excelled at school and that Brenda had been very involved in Z.N.H.'s school activities. The evidence also showed that Wayne had been involved in Z.N.H's school activities. Brenda believed that moving Z.N.H. with her to Coppell

would be in his best interest. Brenda said that, if Z.N.H. were allowed to move to Coppell, Matthew would lose his Wednesday visits with Z.N.H. and would not be able to be around for Z.N.H.'s games and activities. However, Brenda also presented evidence that Matthew would receive some additional visitation periods under a standard possession order if the court permitted Z.N.H. to move to Coppell.

Wayne testified that he and Z.N.H. had a very close and loving relationship. Wayne said that he took Z.N.H.'s best interest into consideration when he took the job with Argosy. He said that Brenda had continued to live in Abilene. Wayne testified that Z.N.H. had an excellent relationship with Brenda and that Z.N.H. would be devastated if he had to live with Matthew. Wayne said that he and Brenda were willing to do whatever was necessary to insure that Z.N.H. had continued contact with Matthew.

Brenda presented Z.N.H.'s school principal, current teachers, and many of his former teachers as witnesses. In summary, the principal and teachers provided testimony that Z.N.H. was very intelligent, that he was in the school's gifted and talented program, that he was a well-rounded child and well-liked by his classmates, that Brenda had been very involved in his school activities, that Wayne had been involved in his school activities, and that Brenda was a "great" mom. Z.N.H.'s principal testified that Z.N.H. would not have any problems adapting to a school in Coppell. Z.N.H.'s fifth grade math teacher thought that Z.N.H. would do great wherever he attended school.

Brenda also called other witnesses. Terry McQueen testified that she knew Brenda through church. McQueen said that Z.N.H. was sweet and very intelligent. She said that Brenda had a very close relationship with Z.N.H. and that Wayne had an awesome relationship with Z.N.H. Karen Wooliscroft testified that her son and Z.N.H. were best friends. She said that Brenda was very involved in Z.N.H.'s life. She also said that she thought Z.N.H. would do fine in Coppell. Gwen Boyer testified that Brenda and Wayne had a very loving and caring relationship with Z.N.H. Carol Futter testified that Brenda's relationship with Z.N.H. was "[p]robably as ideal as you could have between a mother and a son." Kathleen Cloyd testified that Brenda and Z.N.H. moved in with her in August 2006. She said that Z.N.H. was very, very close to Brenda. She also said that Z.N.H. had a great relationship with Wayne. Cloyd testified that Z.N.H. would be devastated if he were not allowed to move to Coppell with Brenda.

Wayne's father, Ronald A. Smith, testified that Brenda and Z.N.H. had an excellent relationship. He thought that Z.N.H. would be "close to devastated" if he were not allowed to move to Coppell with Brenda. Brenda's father, Anastacio Gomez., testified that he and Brenda had strong relationships with Z.N.H.

Matthew testified that he lived in Tuscola, Texas. Matthew was employed as a special education teacher at Sweetwater Intermediate School. Matthew said that he and Dawn had five children, including Z.N.H. He said that the family "really blend[ed] together." He said that Z.N.H. was a lot like him and that he wanted to do what was best for Z.N.H. Matthew said that his parents had moved to the area to be close to Z.N.H. Matthew testified that he wanted Z.N.H. to have equal time with him and Brenda. He said that he had been intimately involved in Z.N.H.'s education. Matthew did not believe that Brenda and Wayne had to move to Coppell. Matthew testified that Brenda had made some wonderful choices for Z.N.H. and that Brenda was a great mom but that her choice to move to Coppell was hurting Z.N.H.

Dawn testified that she loved Z.N.H. and that he was a part of the family. She said that Z.N.H. called her "El Mama." She said that her two younger sons idolized Z.N.H. Dawn testified that Brenda was a good mother. She said that Z.N.H. was devastated by the thought that he was going to be away from Matthew, Dawn, and his siblings. She said that "living three and a half hours away from somebody [was] not a close bond."

Matthew's father, Eugene Hendrix, testified that he had a close and loving relationship with Z.N.H. Hendrix testified that he and his wife had moved from Comanche, Texas, to Lawn, Texas, to be closer to Matthew's family. Hendrix thought that it would be good for Z.N.H. to stay in the area so that he could continue to be a regular part of Z.N.H.'s life. He thought that it would be devastating to Z.N.H. if Z.N.H. moved to the Dallas area.

Matthew called a number of other witnesses to testify about Z.N.H.'s relationships with him and Dawn. Susan Kathleen Nall knew Matthew and Dawn through church. Nall said that Z.N.H. was a great kid and a sweet kid and that Matthew and Dawn were great parents. Nall did not believe that Z.N.H. would have a problem adjusting to living in Coppell. However, she thought that it would be best for Z.N.H. if Brenda and Matthew both continued to have homes in this area. Nall also testified that she was the librarian for Buffalo Gap Elementary School. She said that three of

Matthew and Dawn's children attended Buffalo Gap Elementary. She said that Dawn did volunteer work at school at least a couple of times a week.

Charlotte Ilene Hall also knew Matthew and his family through church. She testified that Matthew and Dawn were excellent parents and that they had a very successful blended family. Hall testified that Matthew treated Z.N.H. the same way that he treated his other children. She said that Z.N.H. adored Matthew. Hall said that she had seen Brenda at some of Z.N.H.'s church functions. She said that Z.N.H. and Brenda had a good relationship and that, as far as she could tell, Z.N.H. had a good relationship with Wayne.

Matthew presented other witnesses who knew Dawn and him through church. David Cruddas testified that Matthew and Dawn had been very good parents and that Z.N.H. had always seemed to be happy. He said that the last time he had seen Z.N.H. was about four years ago. Linda Scales testified that Matthew and Dawn were "very in control" as parents. Scales thought that it would be devastating to Z.N.H. if he moved away from his siblings. She believed that Z.N.H. needed to stay. Jenny Halliburton testified that Matthew and Dawn were a very loving and giving couple, loved their kids, and had "great interaction" with children. Ken Cunningham testified that Matthew and Dawn were volunteers in the church's youth program. He said that Z.N.H. mixed in well with middle and high school aged children. Lala Fowler testified that Matthew and Dawn were a very loving couple. She also said that Z.N.H. was very caring and smart and that he had a "great bond" with his siblings. Fowler believed that children should have fathers in their lives as much as possible. Helen Remple testified that Matthew and Dawn were loving parents who cared very deeply for their children.

Kathy Smartt testified that she was the principal at Sweetwater Intermediate School. She said that Matthew was the special education teacher at the school. She said that Matthew was a really good man and loved the kids at school. She also said that Z.N.H. was a very neat child.

Robert Penton testified that he was a clinical social worker. He thought that Matthew and Dawn were good parents. He said that Matthew wanted what was best for Z.N.H. Penton testified that it was good for children to be involved with both of their parents and that "you can't spend too much time with your son as a father."

Janell Young also knew Matthew and Dawn through church. Young testified that she was a teacher at Abilene High School. She said that a father's involvement makes a difference in a child's behavior and that the father's presence is an advantage to a son who is in trouble. Young testified that there was "nothing like the influence of a young man's dad and the love and approval of that father in the success of a young man in our society."

Viewing the evidence in its entirety and considering the *Lenz* factors, we find that the evidence was legally sufficient to support the jury's finding that it was in Z.N.H.'s best interest to modify the judgment nunc pro tunc by lifting the geographical limitation provision from the judgment. While some of the *Lenz* factors may support a conclusion that lifting the geographical restriction was not in Z.N.H.'s best interest, other *Lenz* factors strongly support the conclusion that lifting the geographical restriction was in his best interest. We overrule Matthew's second and third issues (legal sufficiency challenges). We need not address Matthew's fourth through seventh issues. Rule 47.1.

*This Court's Ruling*

We reverse the trial court's order, and we remand this cause to the trial court for a new trial and further proceedings consistent with this opinion.


TERRY McCALL

JUSTICE


February 26, 2009

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

11