NO. 07-08-0268-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JULY 7, 2009

_____

IN THE MATTER OF THE MARRIAGE OF
RUSTON CRAIG SWIM AND HOLLY LYNN HANSON SWIM
AND IN THE INTEREST OF C.H.S., A CHILD,

_____

FROM THE COUNTY COURT AT LAW NO. 3 OF LUBBOCK COUNTY;

NO. 2007-538,917; HONORABLE PAULA LANEHART, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**OPINION**

Appellant, Ruston Craig Swim, appeals certain provisions of the divorce decree dissolving his marriage to Appellee, Holly Lynn Hanson Swim. By two issues, Appellant contends the trial court (1) abused its discretion by failing to enter a standard possession order[1] pertaining to his possession of and access to their minor child, C.H.S., and (2) erred

---

[1]*See* § 153.311-.317 Tex. Fam. Code Ann. (Vernon 2008).

by imposing certain orders pertaining to counseling, medical treatment, and reporting. We affirm in part and reverse and remand in part.

## Background

Ruston does not directly contest the legal or factual sufficiency of the evidence to sustain the trial court's decision, nor does he contest the property division, child support, appointment of joint managing conservators, his limited access to C.H.S. before age three, the imposition of a standard possession order at age five, or Holly's right to determine C.H.S.'s primary residence, therefore, we will only discuss those factual elements that are germane to our opinion.

The parties were married September 6, 2005, and had one child, C.H.S., who was born on May 22, 2006. On April 17, 2007, Ruston filed his original petition for divorce. Holly subsequently filed her answer and a counter-petition. Both parents sought appointment as C.H.S.'s joint managing conservator. While Holly sought designation as the conservator with exclusive right to designate the child's primary residence, Ruston left that determination to the discretion of the trial court. A bench trial was held February 5, 6 and March 5, 2008.

The evidence at trial established that Ruston suffered from a psychological disorder and drug abuse problem which originated in his teens and continued throughout most of his adult life. Prior to the marriage, Dr. Raymond Martin diagnosed Ruston as bipolar and

2

prescribed medication to treat his condition. Ruston also began therapy sessions for substance abuse and family counseling with Patrick D. Randolph, a licensed psychologist. In September 2003, Ruston began attending Alcoholic's Anonymous (AA) meetings. Thereafter, in December 2003, he unilaterally terminated his treatment with Martin and Randolph.

When Ruston and his first wife, Patricia, were divorced in March 2005, Ruston became the primary caretaker for their four year old son, J.S.[2] When Ruston married Holly in September 2005, he was neither taking medication for his bipolar condition nor attending counseling or AA for his substance abuse issues. In December of 2005, Ruston relapsed, using methamphetamine twice. Thereafter, Ruston sought treatment from Dr. Arun Patel, a psychiatrist, who also diagnosed Ruston as having a bipolar disorder and again prescribed medication for his condition.

Phillip J. Davis, a psychologist, testified he conducted an assessment to determine whether Ruston's drug dependence and/or bipolar disorder would interfere with Ruston's ability to effectively interact with C.H.S. Davis also diagnosed Ruston as bipolar and his assessment revealed Ruston had a history of beginning and terminating treatment. He opined that Ruston suffered from recurrent experiences, or episodes, of depressive behavior and anxiety accompanied by an ongoing struggle with abstinence from chemical dependency. Davis concluded that Ruston's bipolar disorder and drug dependence could

_____

[2]Ruston was appointed joint managing conservator with the right to determine his primary residence.

interfere with his interaction with C.H.S. Although Ruston was engaged in a program of self help, individual therapy, and medical intervention, Davis opined there could be a problem if he did not maintain stability in his behavior and treatment program.

After his initial assessment, Davis referred Ruston to Randolph for individual therapy and Patel for medication management. Davis believed a continuing relationship between Ruston and his medical providers was important in terms of Ruston's visitations with C.H.S. because of Ruston's problematic interactions with Holly, his desire to see C.H.S., and his report of failed treatment for substance abuse and discontinuance of his medication for his bipolar condition. He recommended Ruston continue interaction with Patel and Randolph until he and his doctors concurrently agreed that Ruston no longer needed medication and/or individual therapy.

At trial, Randolph testified Ruston initially started individual psychotherapy for his bipolar disorder in January 2003. However, in December 2003, Ruston terminated his therapy with Randolph until Davis referred him in May 2007. Randolph indicated that, since Davis's referral, Ruston had been regularly attending AA meetings at least four times a week as well as pursuing a spiritually-based treatment. He further testified Ruston was compliant with his psychotherapy and actively participating in cultural, charitable, and religious organizations. Randolph considered Ruston's vocational success managing a brokerage firm as a strong indicator of the success of his treatment. As a result of

4

Ruston's progress, their sessions became less frequent. Randolph opined his therapy sessions were no longer necessary.

Patel testified he first saw Ruston following his December 2005 relapse. At that time, Ruston was struggling with symptoms of severe depression and anxiety. His initial diagnosis was bipolar disorder–type one, generalized anxiety disorder and substance abuse. In his opinion, Ruston was always going to have his symptoms which would reappear if he ceased medicating and there would always be a concern he would use drugs again. He described Ruston's illness as life-long.

Holly, a pediatrician, testified that, while they were dating, Ruston hid his drug dependence problem and diagnosis of bipolar disorder. The month after their wedding, the couple sought marital counseling after Ruston yelled at her concerning money matters, called her obscene names, and began throwing things in the house. After Ruston started seeing Patel and reestablished a medication regimen for his bipolar disorder, his mood became more stable; however, Holly remained concerned. She began counting his medicine and determined there were times when he was not taking his medication. Holly testified Ruston indicated he didn't think he needed his medication and that these pronouncements were usually followed by mood swings, agitation, distraction, destructibility, and pressured speech.

During the divorce proceedings, Holly sought a court order that would monitor Ruston's compliance with his treatment for his bipolar disorder and substance abuse to

assure C.H.S. would be going to a safe environment on visitations. Determining whether Ruston was compliant with his medication and treatment was paramount to Holly.

Ruston, a vice-president and general manager of operations of a food brokerage, testified he discontinued his treatment in December 2003 because, at the time, he did not want to accept his diagnosis. Ruston could not explain why he relapsed in December 2005. He testified that since he started seeing Patel he had followed his prescription drug program with the exception of a period of time following surgery when he ceased taking his medication due to doctors' orders. He also acknowledged that he had a substance abuse problem and was bipolar.

On May 29, 2008, the trial court signed a *Decree of Divorce* dissolving the marriage between Ruston and Holly. The decree appointed Ruston and Holly as joint managing conservators of C.H.S., with Holly having the right to establish the child's primary residence. The decree also contained provisions pertaining to counseling for Ruston[3] and Ruston's possession of and access to the child.

---

[3]The *Decree of Divorce* provided, in relevant part as follows:

*Provisions for Counseling for Ruston Craig Smith*

     IT IS ORDERED that RUSTON CRAIG SMITH shall continue counseling with a mental health professional and that the mental health professional shall file a written report with the Court every six (6) months beginning September 1, 2008.

     IT IS FURTHER ORDERED that RUSTON CRAIG SMITH shall continue to attend Alcoholics Anonymous or Narcotics Anonymous meetings weekly and shall continue to take prescription medications as prescribed for his bipolar disorder.

6

## Discussion

Ruston asserts that the decree's provisions governing his possession of and access to C.H.S. between the ages of three and five are invalid because the imposition of a limited possession schedule is unsupported by the record.[4] He next asserts the trial court exceeded its authority by (1) requiring him to continue taking medications prescribed for his bipolar disorder, (2) requiring him to continue counseling with a mental health professional, (3) requiring him to continue to attend Alcoholics Anonymous or Narcotics Anonymous weekly, and (4) requiring a mental health professional to submit a written report every six months.

Holly asserts the record contains adequate evidence to support the modified order of possession and access. She also asserts the trial court did not exceed its authority by requiring Ruston to "continue" therapy, medication, and periodic reporting that was in place during the divorce proceedings.

### I.      Standard of Review

A trial court has broad discretion to fashion the terms of a decree related to custody, visitation, and possession; *see In re Doe 2*, 19 S.W.3d 278, 281 (Tex. 2000); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982), and may be reversed only if it appears that

---

[4]Ruston contends the limited possession order provides for twenty-three and one-half days less per year than a standard possession order would permit while C.H.S. is between the ages of three and five years old.

7

the court abused its discretion in light of the record as a whole. *Id*. A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). *See In Interest of Doe*, 917 S.W.2d 139, 141 (Tex.App.–Amarillo 1996, writ denied). Furthermore, we may not reverse the trial court's judgment simply because we disagree with the outcome. Rather, we must conclude that the decision lacked basis in fact or law or involved a misapplication of fact to law. *In re C.R.T.*, 61 S.W.3d 62, 65 (Tex.App.–Amarillo 2001, pet. denied).

Under the abuse of discretion standard, legal and factual insufficiency are not independent grounds of error, "but are relevant factors in assessing whether the trial court abused its discretion." *Ditraglia v. Romano*, 33 S.W.3d 886, 889 (Tex.App.–Austin 2000, no pet.) (quoting *Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex.App.–Austin 1997, no pet.). Further, there is no abuse of discretion where the record contains *some* evidence of a substantive and probative character in support of the trial court's decision. *Baltzer v. Medina*, 240 S.W.3d 469, 475 (Tex.App.–Houston [14th Dist.] 2007, no pet.).

## II.     Conservatorship – Possession and Access

### A.     Statutory Scheme

In matters of conservatorship, the public policy of this State is to assure continuing contact between children and parents who have established the ability to act in their child's

best interest, provide a safe, stable, and nonviolent environment for the child and encourage parents to share in their child's development after separation or divorce. Tex. Fam. Code Ann. § 153.001 (Vernon 2008).[5] When determining issues related to conservatorship or possession of and access to the child, the best interest of the child is the primary consideration. § 153.002. *See In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003).

If, as here, both parents are appointed as the child's conservators, the trial court specifies the rights and duties that are to be exercised by the parents. § 153.071. While the guidelines established in the standard possession order are intended to guide courts as to the minimum possession for a joint managing conservator; § 153.251(a), there is a rebuttable presumption that the standard possession order provides the reasonable minimum possession of a child for a parent named as a joint managing conservator; § 153.252(1), and that the order is in the child's best interest. § 153.252(1) & (2).

If there is sufficient evidence to rebut this presumption, however, the trial court may deviate from the standard possession order. § 153.256. *See Niskar v. Niskar*, 136 S.W.3d 749, 756 (Tex.App.–Dallas 2004, no pet.). When deviating from the standard possession order, the trial court may consider: (1) the age, developmental status, circumstances, needs, and the best interest of the child; (2) the circumstances of the managing conservator and of the parent named as a possessory conservator; and (3) any other relevant factor. § 153.256. Further, a reviewing court's holding that a trial court did not

---

[5]Hereafter, for convenience, we will cite to provisions of the Texas Family Code simply as "§ _____" or "section _____."

9

abuse its discretion implies that the evidence contained in the record rebutted the presumption that the standard possession order was reasonable and in the child's best interest. *See Gray v. Gray*, 971 S.W.2d 212, 216 n.2 (Tex.App.–Beaumont 1998, no pet.) (citing *In Interest of Doe*, 917 S.W.2d 139 (Tex.App.–Amarillo 1996, pet. denied)).

### B.  Standard Possession Order–Best Interest of The Child

In determining the issues of conservatorship and possession of a child, the trial court is given wide latitude in determining the best interest of the child and will be reversed only for an abuse of discretion. *In re C.R.T.,* 61 S.W.3d at 65 (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982).  This is, in part, because the trial court is in a better position having "faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent." *Coleman v. Coleman*, 109 S.W.3d 108, 111 (Tex.App.–Austin 2003, no pet.) (citing *Martinez v. Molinar*, 953 S.W.2d 399, 403 (Tex.App.–El Paso 1997, no writ)).  Thus, when the testimony of witnesses is conflicting, this Court will not disturb the credibility determinations made by the trial court or jury and we will presume that the factfinder resolved any conflict in favor of the verdict. *See Coleman,* 109 S.W.3d at 111; *Minjarez v. Minjarez*, 495 S.W.2d 630, 632 (Tex.Civ.App.–Amarillo 1973, no writ).

Ruston asserts that the record does not adequately support the trial court's final decree restricting his possession of and access to C.H.S. between the ages of three and five years old.  Specifically, he asserts the restrictions are unreasonable because his drug

10

relapses occurred more than two years prior to the final hearing, his cessation of his bipolar medication in March 2006 was at the request of his doctors after he suffered a bad reaction following surgery, and he has successfully served as J.S.'s primary caretaker since March 2005.

Having reviewed the hearing transcript, the final decree, and the trial court's findings of fact and conclusions of law, we find the trial court restricted Ruston's possession and access to C.H.S. due to issues related to Ruston's drug dependence, diagnosis of a type one bipolar disorder, history of drug relapses, and past medication cessation.[6]  During a five year period preceding the final hearing, Ruston had undergone four drug relapses where he used methamphetamine.  His relapses in 2002-2003 occurred when he was attending AA meetings and after he began receiving treatment from a physician for his bipolar condition.  There was also evidence that Ruston did not take his bipolar diagnosis seriously and quit his medication, AA meetings, and medical treatment by September 2005 at the latest.  Thereafter, he suffered two additional drug relapses in mid-to-late December 2005.

---

[6]Consideration of a child's best interests may include whether a parent has a dependence on drugs or alcohol.  *See In re Walters*, 39 S.W.3d 280, 289 (Tex.App.–Texarkana 2001, no pet.); *Monaghan v. Crawford*, 763 S.W.2d 955, 957-58 (Tex.App.–San Antonio 1989, no writ); Kotrla v. Kotrla, 718 S.W.2d 853, 855 (Tex.App.–Corpus Christi 1986, writ ref'd n.r.e.).  Moreover, possession or access to a child has been restricted, or prohibited, when a parent abuses drugs or alcohol.  *See In re Walters*, 39 S.W.3d at 286-88; *Johnson v. Johnson*, 804 S.W.2d 296, 301 (Tex.App.–Houston [1st Dist.] 1991, no writ); *White v. Chamberlain*, 525 S.W.2d 273, 275 (Tex.Civ.App.–Austin 1975, no writ); *Ex parte Davis*, 450 S.W.2d 97, 98 (Tex.Civ.App.–Houston [14th Dist.] 1970, no writ).  Mental illness is also a factor to be considered and may result in restrictions, or prohibition, regarding custody.  *See generally Meade v. Meade,* 414 S.W.2d 541, 542 (Tex.Civ.App.–Austin 1967, no writ).

Holly testified Ruston hid his drug dependence and underplayed his bipolar diagnosis while they were dating and after they were married. When Ruston suffered his two drug relapses in mid-to-late December 2005, he simply disappeared and abandoned his parenting responsibilities. She also testified that, after Ruston began seeing Patel in December 2005, there were times Ruston indicated he didn't need his medication and would subsequently suffer from mood swings, agitation, distraction, destructibility, and pressured speech. She counted his pills and determined he was not taking his medication as prescribed. She also testified that Ruston provided little care for C.H.S. after he was born. During the interview process with Davis, Ruston reported he was angry and verbally aggressive with Holly and described recurrent angry exchanges with her during their relationship.

Given this evidence, we cannot say that the trial court abused its discretion by issuing a modified possession order. Whether evidence of substance abuse is too remote is generally left to the sound discretion of the trial court. *Kortla*, 718 S.W.2d at 855 (custody not in the best interest even though appellant had not used drugs for two years); *Standifer v. Schmidt*, 366 S.W.2d 947, 948 (Tex.Civ.App.–San Antonio 1963, no writ) (custody not in the best interest even though divorced spouse had not used narcotics for two years and evidence showed spouse was "otherwise a fine person"). Finally, although Ruston produced evidence that he has successfully served as J.S.'s caretaker following

12

his first divorce, the ages of the two children are substantially dissimilar–at the time of trial, C.H.S. was less than two years old while J.S. was in excess of six years old.[7]

Accordingly, we find the trial court did not abuse its discretion by entering the modified possession order. *See In re Walters*, 39 S.W.3d at 286-87. Issue one is overruled.

### III.     Continuing Medical Treatment and Reporting Requirement

The Texas Family Code provides that, if the trial court determines that the parties have a history of conflict in resolving an issue of conservatorship or possession and access, the court may order a party to participate in counseling with a mental health professional. § 153.010. *See Brook v. Brook,* 865 S.W.2d 166, 174 (Tex.App.–Corpus Christi 1993), *aff'd*, 881 S.W.2d 297 (Tex. 1994).[8] Moreover, regarding the trial court's ability to fashion an order regarding possession and access, the Texas Supreme Court has stated as follows:

> we are of the view that a suit properly invoking the jurisdiction of a court with respect to custody and control of a minor child vests that court with decretal powers in all relevant *custody, control, possession and visitation matters involving the child*. The courts are given wide discretion in such proceedings. [citations omitted]. Technical rules of practice and pleadings are of little importance in determining issues concerning the *custody* of children.

---

[7]In addition, there was evidence that Ruston appeared unwilling to make the accommodations undertaken by Holly to ameliorate C.H.S's issues due to nystagmus, i.e., communicating with C.H.S. through signing and maintaining a consistent schedule of meals and naps.

[8]§ 14.03 (h) relied upon by the *Brook* Court is now § 153.010.

13

[citations omitted]. It is beside the point that in the instant proceeding the trial court, whether erroneously or not, construed the pleadings of petitioner as seeking only a modification of *visitation* rights; the point is that once the child is brought under its jurisdiction by suit and pleading cast in terms of *custody and control*, it becomes the duty of the court in the exercise of its equitable powers to make proper disposition of all matters comprehended thereby in a manner supported by the evidence.

*Leithhold v. Plass,* 413 S.W.2d 698, 701 (Tex. 1967) (emphasis added).[9]

At the final hearing, Davis testified that Ruston's bipolar disorder and drug dependence would interfere with his interaction with C.H.S. if Ruston did not maintain stability in his behavior and treatment program.[10] He opined that Ruston required ongoing treatment with Randolph and Patel because of his problematic interactions with Holly, his desire to see C.H.S. and his history of failed treatment for substance abuse and bipolar disorder. Davis recommended that Ruston continue interaction with Randolph and Patel until Ruston and his doctors concurrently agreed that he no longer needed medication and/or individual therapy.[11]

---

[9]*See Lohmann v. Lohmann,* 62 S.W.3d 875, 878-89 (Tex.App.–El Paso 2001, no pet.); *In re S.D.'s Marriage,* 511 S.W.2d 606, 608 (Tex.Civ.App.–Amarillo 1974, no writ).

[10]Patel opined that, if Ruston ceased his medication, he would exhibit an agitated mood within one to two weeks. Without medication, Patel also testified that Ruston's mood would crash "really bad," and, when he became high, he would experience "really manic episodes with impulse shopping in the past, drug use history, become verbally aggressive, loud." A bipolar episode, according to Patel, could also increase Ruston's impulsivity and lower his inhibitions leading to another drug relapse. Importantly, when Ruston checked into a hotel or stayed at a friend's house overnight to use methamphetamine during his drug relapses, he ceased all communication with his family and completely abdicated his parental role to Holly for care of J.S. and C.H.S. Neither was he able to resume this role the following day when he returned to the house.

[11]Although Randolph opined that he believed therapy sessions were no longer necessary, Davis opined Ruston needed continued interaction between therapy and medication while Patel expressed no opinion but testified "counseling [was] very, very helpful."

14

Patel described Ruston's illness as life-long. He indicated there would always be a concern that Ruston's symptoms would reappear if he ceased medicating and used drugs again. In fact, he testified that it is common for a person with a history of substance abuse intermixed with a bipolar condition, once in awhile, to experience substance abuse relapses. Although Ruston had a "very good record" over the past two years of compliance with his prescription drug program and had not used illegal drugs since he started treatment, Patel testified "[t]he concern is always there, once a person has issues with drugs and alcohol, the concern is always there."

Given Ruston's history of discontinued treatment for bipolar disorder, drug relapses and his future prognosis, we cannot say it would be an abuse of discretion to impose the conditions ordered, i.e*.,* continued counseling and prescription medical treatment for his bipolar condition, weekly attendance at AA meetings, and a status report every six months from a mental health professional, *as a condition of possession and access. See Brook*, 865 S.W.2d at 174 (not an abuse of discretion to order psychological counseling indefinitely). That's not, however, what the decree of divorce ordered.

Ruston contends the trial court's decree deprives him of the protections afforded incapacitated persons under the Texas Probate Code because the order is not related in any manner to the child the subject of this suit. *See* Tex. Prob. Code Ann. §§ 601-726 (Vernon 2003). We agree. The conditions now appear in the decree as stand-alone orders of indefinite duration. They are not conditions precedent to possession and access,

and compliance is not a requirement in order to obtain or enhance Ruston's rights of possession and access. As such, they do not fall within the broad discretion of the trial court afforded by § 153.010 of the Texas Family Code. Accordingly, Ruston's second issue is sustained.

## Conclusion

Because we are unable to determine how the trial court would exercise its discretion in relating the requirements imposed to the rights of possession and access granted, we reverse the trial court's judgment in part and delete the two paragraphs set forth in footnote 3 *supra,* and remand this cause for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

Patrick A. Pirtle
Justice

.

16