NO. 07-11-00128-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

DECEMBER 14, 2011

---

IN THE INTEREST OF C.P.L., A CHILD

---

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 77,573-E; HONORABLE DOUGLAS WOODBURN, JUDGE

---

Before CAMPBELL and HANCOCK, JJ. and BOYD, S.J.

**MEMORANDUM OPINION**

Father and mother each moved the trial court to modify portions of their divorce decree concerning conservatorship of their daughter, C.P.L. Mother now appeals certain rulings of the trial court in that regard. We will modify the trial court's order and, as modified, affirm.

Background

C.P.L. was born in May 2008, and about six months later father and mother married. The marriage ended in divorce. The trial court signed a decree approved in form and substance by father and mother in September 2009. Among its terms, the decree appointed father and mother joint managing conservators of C.P.L. It granted

mother the exclusive right to designate the primary residence of C.P.L. "within 100 miles of Potter/Randall County, Texas."

In September 2010, mother filed a motion to modify the decree. She sought removal of the geographic restriction and a custody arrangement splitting possession of C.P.L. between father and mother in two week increments until the child reached "school age." In a supporting affidavit, mother expressed the desire to move to Tulsa, Oklahoma, and take advantage of employment opportunities beneficial to her and C.P.L.

Father filed a counter-motion to modify the decree. While alleging no change of circumstances, he sought the right to designate the primary residence of C.P.L. should mother desire to move from Potter and Randall counties.

Trial of the motions was to the bench in November 2010. After hearing the testimony of four witnesses, two for mother and two for father, the trial court rendered judgment denying mother's request to remove a geographic restriction. It appointed father and mother joint managing conservators and ordered equal possession until C.P.L. reaches kindergarten age or November 3, 2012, whichever occurs first. Effective on the first of those events, father was appointed the conservator with the exclusive right to designate C.P.L.'s primary residence. Finally, the court ordered that beginning with 2011, "and for all subsequent years," father shall have the exclusive right to the federal income tax child dependency exemption. This appeal followed.

Analysis

Through three issues, mother argues the trial court abused its discretion in denying her request to lift the geographic restriction, prospectively granting father the exclusive right to designate the primary residence of C.P.L., and awarding father the federal income tax dependency exemption. Mother's issues implicate the sufficiency of evidence supporting the trial court's implicit findings that it was in the best interest of C.P.L. to retain a geographic restriction, to appoint father the conservator with the exclusive right to designate the primary residence, and to grant father the dependency exemption.

Standard of Review

We review the trial court's modification of a divorce decree under the abuse of discretion standard. *In re Marriage of Swim*, 291 S.W.3d 500, 504 (Tex.App.--Amarillo 2009, no pet.). Under this standard, we may not interfere with the trial court's decision so long as it is supported by evidence of a substantive and probative character and the ruling comports with the law. *Id.* Under the abuse of discretion standard we apply, legal and factual sufficiency of the evidence are not independent grounds of error, but if implicated are relevant factors for determining whether the trial court abused its discretion. *Id.*; *Baltzer v. Medina*, 240 S.W.3d 469, 475 (Tex.App.--Houston [14th Dist.] 2007, no pet.); *Niskar v. Niskar,* 136 S.W.3d 749, 753 (Tex.App.--Dallas 2004, no pet.); *see Zeptner v. Zeptner*, 111 S.W.3d 727, 734 (Tex.App.--Fort Worth 2003, no pet.) (division of community property). *See also Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex. 1991).

3

Here, findings of fact and conclusions of law were neither requested nor filed.  In the absence of express findings, we imply all necessary findings in support of the trial court's judgment.  *In re B.N.B.,* 246 S.W.3d 403, 406 (Tex.App.--Dallas 2008, no pet.) (citing *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 83 (Tex. 1992)).

Mother's First and Second Issues

Because of their interrelation, we will jointly discuss mother's first and second issues.  Mother testified she wanted a job that would make use of her math degree.  At the time of divorce, she was a high school math tutor and special education assistant.  She resigned the position in May 2010 because of stress.  She also did not wish to become a teacher.  Mother additionally held an outside tutoring position which ended when the program with which she was affiliated ceased operations in the Texas Panhandle.

To locate employment, mother posted a resume through several internet services and had "a few" job interviews.  Her job search within 100 miles of Amarillo was minimal although she agreed she looked to the extent she was able.  During this time, mother worked at a local Olive Garden Restaurant and for Avon.  She received food stamps and WIC (Women, Infants, and Children Program) assistance.  About six months after the divorce mother told father she wanted to move from the Amarillo area.  She ultimately received a job offer as a teller at a Tulsa bank.  She also found a position in Tulsa with the tutoring program with which she formerly was associated.

In October 2009, mother began dating Scott Middleton.  He was an Olive Garden employee whom she met about four years before her divorce.  Middleton was twenty

4

years her senior and obtained a divorce during the summer of 2009. Before mother's divorce, Olive Garden transferred Middleton to Tulsa where he was general manager. Mother expanded the range of her job search to Tulsa in May 2010. Her rationale was to be near Middleton and to provide for her needs and those of C.P.L.

Mother believed moving to Tulsa would be in C.P.L.'s best interest as the potential existed for tripling her pay and providing more for her daughter. On cross-examination, mother acknowledged the associated travel expenses of living in Tulsa might diminish any extra pay she earned. And she could not say whether the detriments to C.P.L. of moving to Tulsa would outweigh any benefits. While unwilling to allow father the right to designate C.P.L.'s primary residence, mother testified the child's relationship with father was very important and she was "willing to do as much as [she could] to make it stay the way that it is or more."

Several members of mother's family live in Amarillo, including her parents, her brother, her grandmother, and a niece. The niece is the same age as C.P.L. and they have a close relationship. C.P.L. sees her maternal grandparents three or four times a week. Mother acknowledged father also had family living in Amarillo and she believed C.P.L. saw them on a regular basis.

Janet, appellant's mother, testified she supported her daughter's move to Tulsa even though she would lose "almost daily" contact with C.P.L. According to Janet, the move would allow mother to make a good living to support C.P.L. She agreed her daughter struggled over the preceding year. To help facilitate her daughter's move to Tulsa, Janet indicated she could assist with transportation and caring for C.P.L. as well

as seeing that C.P.L. has regular contact with father. On cross-examination, Janet agreed if C.P.L. moves to Tulsa father will not be able to have the same relationship with her.

Father testified he was a customer service representative at a pharmacy but also studying to become a wind turbine technician. He believed his income was less than what mother earned at Olive Garden. Father has relatives in Amarillo including his parents, his grandfather, three aunts, and a three-year-old niece. The niece and C.P.L. play together. C.P.L. sees her paternal grandparents two or three times a week. Father and C.P.L. attend church.

Steve, the paternal grandfather of C.P.L., is a coach at the high school where mother was once employed. He assisted her in obtaining the position. In his opinion, opportunities for private math tutors exist in Amarillo. Steve testified of a good relationship with C.P.L. They visit each Wednesday and every other weekend. He stated he would be "devastated" if C.P.L. moves to Tulsa. C.P.L. plays with Steve's other granddaughter, usually on Wednesdays. On cross-examination, Steve expressed the opinion that allowing mother to take C.P.L. to Tulsa would begin "slowly squeez[ing]" the paternal grandparents out of C.P.L.'s life.

*Substantive Law*

A party seeking modification of an order establishing conservatorship, possession, and access to a child must show a material and substantial change in the circumstances, and the modification would be in the best interest of the child. Tex. Fam. Code Ann. § 156.101(a) (West Supp. 2011). In the present case, mother does not

6

dispute the occurrence of a material and substantial change of circumstances. The parties' disagreement concerns the best interest of C.P.L.

The best interest of the child is the court's primary consideration in determining issues of conservatorship and possession of and access to the child. Tex. Fam. Code Ann. § 153.002 (West 2008). The public policy of this state is (1) to assure that children have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child, (2) to provide a safe, stable, and nonviolent environment for the child, and (3) to encourage parents to share in the rights and duties of raising their child after dissolution of the marriage. Tex. Fam. Code Ann. § 153.001(a) (West 2008).

These policy concerns weigh heavily in assessing whether to modify geographic restrictions placed on the child's residence. *In re C.M.G.,* 339 S.W.3d 317, 320 (Tex.App.--Amarillo 2011, no pet.). In addressing these concerns, the trial court may consider factors such as (1) the child's relationship with extended family, (2) the presence of friends, (3) the presence of a stable and supportive environment for the child, (4) the custodial parent's improved financial situation, (5) the positive impact on the custodial parent's emotional and mental state and its beneficial impact, if any, on the child, (6) the noncustodial parent's right to have regular and meaningful contact with the child, (7) the ability of the noncustodial parent to relocate, (8) the adaptability of the noncustodial parent's work schedule to the child, and (9) the health, education, and leisure opportunities available to the child. *Id.* (citing *Lenz v. Lenz,* 79 S.W.3d 10, 15-16 (Tex. 2002); *In re Z.N.H.,* 280 S.W.3d 481, 486-87 (Tex.App.--Eastland 2009, no pet.)).

Unless it would not be in the best interest of the child, the trial court "shall" appoint a parent as sole managing conservator, or both parents as joint managing conservators of the child. Tex. Fam. Code Ann. § 153.131(a) (West 2008). A rebuttable presumption exists that the appointment of the parents as joint managing conservators is in the best interest of the child. *Id.* § 153.131(b). In rendering an order appointing joint managing conservators, the court shall designate the conservator who has the exclusive right to determine the primary residence of the child. Tex. Fam. Code Ann. § 153.134(b)(1) (West 2008).

*Application*

At the time of divorce, Mother agreed with the geographic limitation of the decree although she was then actively seeking other employment without success and within two months began dating a man living in Tulsa. Within six months, she expressed dissatisfaction with her agreement and roughly a year after her divorce sought to shed this restraint. Mother wanted to be near her boyfriend in Tulsa and found entry level work in that city paying significantly more than her Amarillo restaurant job. While the trial court could consider the potential of improved financial circumstances, this did not control its decision. At the time of the modification hearing, mother seemed to be testing the water concerning her anticipated move. So she was not able to present evidence about what life in Tulsa for C.P.L. would be like. Factors such as housing for mother and daughter, their daily routine, daycare, healthcare, friendship and social opportunities, church, regular and meaningful contacts between father and C.P.L., and handling a regular 367-mile trip to Amarillo, were not addressed. On the other hand, the judge heard of a fairly consistent environment for C.P.L. in Amarillo. That is, a

significant Amarillo family network on both sides including playmates, four loving grandparents, church attendance, a new rent house for father owned by his parents, and an established babysitter.

Given mother's intention to move to Tulsa with the accompanying uncertainty of its consequences for C.P.L., we are not able to say the trial court abused its discretion by denying mother's request to dissolve the geographic restriction and granting father the exclusive right to designate the primary residence of C.P.L., following the period of equal possession. We overrule mother's first and second issues.

Mother's Third Issue

By her third issue, mother contends the trial court abused its discretion by awarding father the federal income tax dependency exemption. She grounds this complaint in part on an absence of sufficient evidence.

Under the Internal Revenue Code, a taxpayer is permitted an exemption for dependents in the computation of taxable income. 26 U.S.C.A. § 151(a) & (c) (West 2011). The term "dependent" includes a "qualifying child." 26 U.S.C.A. § 152(a)(1) (West 2011). A child of a taxpayer may be a qualifying child. 26 U.S.C.A. § 152(c)(1)(A) & (2)(A) (West 2011). The parent who has a qualifying child for the greater part of the year is the "custodial parent" under the Internal Revenue Code and is entitled to the exemption. 26 U.S.C.A. § 152(a), (c)(1)(B), (e)(1) (West 2011). When parents claiming a qualifying child do not file a joint return, the child is treated as the qualifying child of the parent with whom the child resided for the longest period of time during the taxable year or, if the child resides with each parent for the same amount of time during

9

the taxable year, the parent with the highest adjusted gross income. 26 U.S.C.A. § 152(c)(4)(A) (West 2011). The noncustodial parent may take the exemption for the qualifying child if the custodial parent signs a written declaration that he or she will not claim the child as a dependent and the noncustodial parent attaches the written declaration to his or her tax return. 26 U.S.C.A. § 152(e)(2) (West 2011). While a trial court has considerable discretion in granting the dependent child exemption, its ruling must conform to applicable federal law. *See In re J.G.Z.,* 963 S.W.2d 144, 150 (Tex.App.--Texarkana 1998, no pet.) (issue of income tax exemptions preempts state law and must be determined according to federal statutes, rules, and regulations).

We conclude no evidence supports the trial court's implicit finding of facts authorizing father's entitlement to the exclusive right to claim the federal dependency exemption. Accordingly, the trial court abused its discretion by awarding the father the exemption as it did. We sustain mother's third issue.

## Conclusion

We reform the modification order of January 19, 2011, by striking the portion awarding father the child dependency income tax exemption for taxable year 2011 "and all subsequent years." We affirm the judgment of the trial court as reformed.

James T. Campbell
Justice

10