# NO. 12-16-00209-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *NIRANJAN GADEKAR,* *APPELLANT* | § | *APPEAL FROM THE 442ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *SMITA ZANKAR,* *APPELLEE* | § | *DENTON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Niranjan Gadekar appeals the trial court's final decree of divorce. On appeal, he presents eight issues. We affirm.

### BACKGROUND

Niranjan Gadekar married Smita Zankar on January 30, 2010, and they are the parents of one child, A.G. On November 20, 2012, Smita filed an original petition for divorce, requesting that Niranjan be ordered to pay child support, and that she be awarded a disproportionate share of the parties' estate. Niranjan filed an answer and counter-petition for divorce, requesting that A.G.'s residence be restricted to Denton County, Texas, and that Smita be ordered to pay child support. In their original and amended petitions or counterpetitions, each parent at one time requested appointment as sole managing conservator of A.G. or appointment as joint managing conservators. Each parent also requested appointment as the parent having the exclusive right to determine A.G.'s primary residence.

After a jury trial, the jury found that grounds existed for a divorce, and that Smita should be appointed sole managing conservator. Further, the jury determined the parties' separate property. In its decree of divorce, the trial court signed a judgment in accordance with the jury's verdict, granted the parties a divorce, and appointed Smita as sole managing conservator of A.G.

and Niranjan as possessory conservator. The trial court also ordered that Niranjan participate in parenting counseling and therapy, and that he not exercise possession of nor access to A.G. if he failed to initiate and maintain regular participation in such counseling and therapy. Otherwise, the trial court granted Niranjan a schedule of possession of A.G. The trial court also ordered that Niranjan pay child support in the amount of $1,208.32 per month to Smita. Finally, the trial court awarded separate property to the parties in accordance with the jury's determinations, and divided the parties' community property estate. Niranjan filed an amended request for findings of fact and conclusions of law on May 4, 2016. On May 24, the trial court filed findings of fact and conclusions of law. This appeal followed.

## MOTION FOR CONTINUANCE

In his fifth issue, Niranjan argues that the trial court abused its discretion by denying his motion for continuance.

### Applicable Law

Texas Rule of Civil Procedure provides that a motion for continuance shall not be granted "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." TEX. R. CIV. P. 251. The denial of a motion for continuance is reviewed under an abuse of discretion standard. *Garner v. Fidelity Bank, N.A.*, 244 S.W.3d 855, 858 (Tex. App.—Dallas 2008, no pet.). The denial will be reversed only if the trial court's action was arbitrary, unreasonable, or without reference to any guiding rules and principles. *Id.* (citing *BMC Software Belg. N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002)).

When, as alleged here, the ground for a continuance is the withdrawal of counsel, the movant must show that the failure to be represented at trial was not due to his own fault or negligence. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *Harrison v. Harrison*, 367 S.W.3d 822, 827 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). The "absence of counsel will not be good cause for a continuance or postponement of the cause when called for trial, except it be allowed in the discretion of the court, upon cause shown or upon matters within the knowledge or information of the judge to be stated on the record." TEX. R. CIV. P. 253. When considering a motion for continuance, the trial court may take into account the entire procedural history of the case. *See Ruiz v. Ruiz*, No. 02-14-00047-CV, 2014 WL 4458952, at *3 (Tex. App.—Fort Worth Sept. 4, 2014, pet denied) (mem. op.); *Qurashi v. Jabeen*, No. 14-12-00858-

2

CV, 2013 WL 2644182, at *3 (Tex. App.—Houston [14th Dist.] June 11, 2013, pet. denied) (mem. op.).

**Analysis**

Here, Niranjan argues that his motion for continuance should have been granted because his attorney withdrew approximately forty days before trial.

During the course of this case, Niranjan has had five attorneys of record over almost four years of litigation. His first attorney withdrew after approximately two and one-half months, and his second attorney withdrew after approximately one year and four and one-half months. However, his third, fourth, and fifth attorneys withdrew after twenty-eight days, thirty-two days, and thirty-eight days, respectively. According to his third and fourth attorney, "[g]ood cause" existed for withdrawal because Niranjan no longer wished to retain the attorney or Niranjan had not cooperated with counsel. His fifth attorney's motion for withdrawal stated that "[g]ood cause" existed because he was "unable to effectively communicate with [Niranjan] in a manner consistent with good attorney-client relations." Moreover, he said, his "relationship with [Niranjan] made further representation untenable because attorney and client [could not] agree on anything regarding the prosecution of this case." The trial court granted the fifth attorney's motion to withdraw on February 17, 2016, over a month before the jury trial.

Niranjan filed a motion for continuance on March 16, 2016, requesting the continuance to secure trial counsel. At the pretrial conference on his motion, Niranjan stated that he made several attempts to hire an attorney, including an attorney who agreed to represent him for only one day. According to Smita's attorney, he had three professional expert witnesses scheduled to testify during trial, and out-of-state witnesses who purchased airline tickets to travel and testify on a certain date. The trial court stated that there had been settings and continuances for three and one-half years, that Niranjan received one previous continuance, that there was "absolutely no reason to give another continuance," and that there was "no reason to drag on the litigation." The trial court denied Niranjan's motion for continuance.

The evidence adduced at the hearing, the last three attorneys' reasons for withdrawing, and the trial court's consideration of the procedural history of the case supports a conclusion that Niranjan's failure to be represented at trial was due to his own fault or negligence. *See Villegas*, 711 S.W.2d at 626; *Ruiz*, 2014 WL 4458952, at *3; *Qurashi*, 2013 WL 2644182, at *3.

Therefore, the trial court did not abuse its discretion by denying Niranjan's motion for continuance. We overrule Niranjan's fifth issue.

## PARENTING FACILITATOR

In his third issue, Niranjan argues that the trial court abused its discretion by failing to allow the parenting facilitator to testify at trial, and in excluding the parenting facilitator's email discussing attempts by the parties to settle the case.

### Applicable Law

A trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard. *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 142 (Tex. 2016). A trial court abuses its discretion when it acts without regard to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). If the ruling is within the zone of reasonable disagreement, an appellate court will not disturb it. *See Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). A successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001).

The court shall specify the duties of a parenting facilitator in the order appointing the parenting facilitator. TEX. FAM. CODE ANN. § 153.6061(a) (West 2014). According to the Texas Family Code, a parenting facilitator shall submit a written report to the court and to the parties as ordered by the court. *Id.* § 153.6081 (West 2014). This report may include a recommendation from the facilitator described by Section 153.6082(e), but it shall be made only to the parties and attorneys. *Id.* Under Section 153.6082(e), the parenting facilitator may make a recommendation to implement or clarify provisions of an existing court order that are consistent with the substantive intent of the court order and in the best interest of the child. *Id.* § 153.6082(e) (West 2014). However, the report may not include recommendations regarding the conservatorship of or the possession of or access to the child who is the subject of the suit. *Id.* A parenting facilitator may testify in any proceeding relating to or arising from the duties of the parenting facilitator, including the basis for any recommendation made to the parties that arises from the duties of the parenting facilitator. *Id.* § 153.6083(a) (West 2014).

4

**Analysis**

Niranjan argues that the trial court abused its discretion in striking the parenting facilitator's testimony. In the order appointing the parenting facilitator, the trial court delineated the facilitor's duties,[1] and ordered that (1) the parenting facilitator should submit a written report to the court and to the parties, and (2) the report should make recommendations pursuant to Section 153.6081 of the Texas Family Code, including a statement of whether the parenting facilitation should continue. In a pretrial hearing, the trial court excluded the facilitator from testifying. In his brief, Niranjan argues that the trial court's error caused the rendition of an improper judgment because it resulted in, among others, the appointment of Smita as sole managing conservator and awarded him less than standard possession. In effect, he contends that the trial court should have allowed the parenting facilitator to testify regarding her recommendations as to the conservatorship or possession of or access to the child.

Although a parenting facilitator may testify, her testimony is limited to a proceeding relating to or arising from the duties of the parenting facilitator, including as to the basis for any recommendation made to the parties that arises from the duties of the parenting facilitator. *See id.* In this case, none of the parenting facilitator's duties, either by order of the trial court or by statutory authority, included a recommendation regarding the conservatorship of or possession of or access to the child. In fact, statutes explicitly forbid the parenting facilitator from making such recommendations. *See id.* §§ 153.6081 & 153.6082(e).

However, Niranjan cites two cases for the proposition that a parenting facilitator could testify at trial. In *In re A.P.M.*, No. 05-10-00679-CV, 2012 WL 2088007, at *4 (Tex. App.—Dallas June 11, 2012, no pet.) (mem. op), and *In re N.W.*, No. 02-12-00057-CV, 2013 WL 5302716, at *3 (Tex. App.—Fort Worth Sept. 19, 2013, no pet.) (mem. op.), the parenting

---

[1] The parenting facilitator's duties in this case included: (1) identifying disputed issues between the conservators; (2) reducing misunderstandings between the conservators; (3) clarifying priorities; (4) exploring possibilities for problem solving; (5) developing methods of collaboration in parenting; (6) understanding parenting plans and reaching agreements about parenting issues to be included in a parenting plan; (7) complying with the Court's order regarding conservatorship or possession of and access to the children; (8) implementing parenting plans; (9) obtaining training regarding problem solving, conflict management, and parenting skills; (10) settling disputes regarding parenting issues and reaching a proposed joint resolution or statement of intent regarding those disputes; (11) addressing the issue of whether the child should engage in play therapy and, if so agreed, reaching a proposed joint resolution or statement of intent about designation of the play therapist; and (12) addressing the issue of determination of a private school in which the child should be enrolled and, if so agreed, reaching a proposed joint resolution or statement of intent about designation of the private school, and in the absence of such agreement and joint resolution or statement of intent, the making of a recommendation by the parenting facilitator comporting with Section 153.6082(e) of the Texas Family Code.

facilitators testified during trial regarding communication, conflict, and relationships between the parties and their children. *See In re A.P.M.*, 2012 WL 2088007, at *4; *In re N.W.*, 2013 WL 5302716, at *3. Neither parenting facilitator gave a recommendation to the court regarding managing conservatorship or possession of or access to the children. Thus, neither case law, statutory authority, nor the parenting facilitator's duties allowed the parenting facilitator to testify regarding her recommendations as to the conservatorship or possession of or access to the child. Accordingly, Niranjan failed to establish that he was harmed by the trial court's alleged error in striking the facilitator's testimony.

Additionally, Niranjan contends that the trial court abused its discretion by excluding the parenting facilitator's email to a third party, which discussed the parties' attempts to settle the case. At trial, Niranjan offered Exhibit 3, which he stated was the parenting facilitator's "recommendation," and he argued that it was relevant to conservatorship and possession issues. The excluded exhibit is an email from the paralegal of one of Niranjan's former attorney's to Niranjan, which forwarded a copy of an email to the mediator in the case, and included a forwarded email from the parenting facilitator to the parties' attorneys and amicus attorney. Smita objected, stating that the trial court already excluded the facilitator's testimony. We previously determined that the parenting facilitator's recommendation relating to conservatorship or possession of the child was prohibited at trial. As such, Niranjan could not attempt to offer the parenting facilitator's report or recommendation through emails from third parties, none of which were available to testify at trial. *See* TEX. R. EVID. 801 ("Hearsay" is a statement that the declarant does not make while testifying at trial and that a party offers in evidence to prove the truth of the matter asserted.). Thus, the trial court did not abuse its discretion by excluding the facilitator's email.

Accordingly, we overrule Niranjan's third issue.

## EVIDENTIARY RULINGS

In his fourth issue, Niranjan contends that the trial court abused its discretion by excluding three exhibits containing emails and instant messages.

## Applicable Law

Whether to admit evidence at trial is a preliminary question to be decided by the court. TEX. R. EVID. 104(a). Only relevant evidence is admissible. TEX. R. EVID. 402. Relevant

evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* TEX. R. EVID. 401. Evidence not properly authenticated is irrelevant, and authentication is a "condition precedent" to admissibility. TEX. R. EVID. 901(a); *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005).

As previously stated, we review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard. *Caffe Ribs, Inc.*, 487 S.W.3d at 142; *Downer*, 701 S.W.2d at 241–42.

## Analysis

Niranjan complains that the trial court abused its discretion in denying admission of three exhibits, Exhibits 12, 13, and 14. We will discuss each exhibit individually.

*Exhibit 12:* At trial, Niranjan offered Exhibit 12 for admission into evidence, and identified the exhibit as consisting of emails between him and Smita. However, he admitted, only "part[s]" of the exhibit included emails between him and Smita, and requested that the trial court review the portion of the exhibit involving emails between the parties. Smita's attorney objected as to hearsay, and the trial court sustained Smita's objection. In his brief, Niranjan again states that the emails were "largely between the parties although there were sections wherein information was passed along to third parties."

We note that the majority of the 231 page exhibit appears to be emails between the parties. However, portions of the exhibit contain emails between Niranjan and the unidentified email addresses of at least seven other persons, some of whom appear to be former legal counsel. The trial court need never sort through challenged evidence in order to segregate the admissible from the excludable. *In re S.M.*, 207 S.W.3d 421, 424 (Tex. App.—Fort Worth 2006, pet. denied) (citing *Jones v. State*, 843 S.W.2d 487, 492 (Tex. Crim. App. 1992), *cert. denied*, 507 U.S. 1035, 113 S. Ct. 1858, 123 L. Ed. 2d 479 (1993)). If evidence is offered and challenged, which contains some of each, the trial court may safely admit it all or exclude it all, and the losing party, no matter who he is, will be made to suffer on appeal the consequences of his insufficiently specific offer or objection. *Id.* When evidence is both admissible and inadmissible, a party may not complain on appeal unless the admissible evidence was specifically offered. *See Speier v. Webster College*, 616 S.W.2d 617, 619 (Tex. 1981). Here, it was not the trial court's responsibility to sort through this voluminous record to determine which

7

emails were admissible and which were inadmissible. *See In re S.M.*, 207 S.W.3d at 424. Thus, Niranjan failed to preserve his complaint regarding the trial court's exclusion of Exhibit 12. *See Speier*, 616 S.W.2d at 619.

 *Exhibit 13:* At trial, Niranjan offered Exhibit 13 for admission, and stated that it contained "chat" transcripts, or instant messages, between the parties. Smita's attorney objected to the exhibit as to hearsay, and the trial court sustained the objection. Later, Niranjan made an offer of proof, stating that he was "authenticating" the instant messages and that he was familiar with the email addresses. In his brief, Niranjan stated that the instant messages were not hearsay, but an opposing party's statement. Smita, however, contends that the instant messages were not properly authenticated.

 Evidence may be authenticated in a number of ways, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by circumstantial evidence. *See Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012); TEX. R. EVID. 901(b)(1), (3)-(4). In *Tienda*, acknowledging that computers can be hacked, passwords compromised, and mobile phones stolen, the Court explained that evidence that "an email on its face purports to come from a certain person's email address, that the respondent in an internet chat room dialogue purports to identify himself, or that a text message emanates from a cell phone number assigned to the purported author" is alone insufficient to support a finding of authenticity. *Tienda*, 358 S.W.3d at 641–42.

 Here, Niranjan initially did not authenticate the instant messages at all, offering no evidence that the messages were purportedly between the parties or from their email accounts. *See* TEX. R. EVID. 901. In his offer of proof, he stated that he was "authenticating" the nine pages of six conversations between the parties, and offered the email addresses of each party. However, this alone is insufficient to support a finding of authenticity. *See id.* He did not offer a business records affidavit from Google, and did not sufficiently link the messages to either him or Smita by identifying the specific contents of the messages or distinctive characteristics found within the writings. *See* TEX. R. EVID. 901(b)(1), (4), 902(10); *Butler v. State*, 459 S.W.3d 595, 603 (Tex. Crim. App. 2015). Thus, the trial court did not abuse its discretion in excluding Exhibit 13.

8

*Exhibit 14:* During trial, Niranjan offered Exhibit 14 for admission as evidence, stating that the exhibit included emails between him and A.G.'s former preschool, Alpha Montessori. However, this argument is inadequately briefed.

Rule 38.1(i) of the Texas Rules of Appellate Procedure requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). The appellate court has no duty to brief issues for an appellant. *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.–Dallas 2006, no pet.). The failure to provide appropriate record citations or a substantive analysis waives an appellate issue. *WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 460 (Tex. App.– Houston [14th Dist.] 2005, pet. denied) (holding that failure to offer argument, citations to record, or citations to authority waives issue on appeal); *Med. Specialist Grp., P.A. v. Radiology Assocs., L.L.P.*, 171 S.W.3d 727, 732 (Tex. App.–Corpus Christi 2005, pet. denied) (same); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994) (holding appellate court has discretion to deem issues waived due to inadequate briefing). References to sweeping statements of general law are rarely appropriate. *Bolling v. Farmers Branch Ind. Sch. Dist.*, 315 S.W.3d 893, 896 (Tex. App.–Dallas 2010, no pet.). Appellate courts must construe briefing requirements reasonably and liberally, but a party asserting error on appeal still must put forth some specific argument and analysis showing that the record and the law support its contentions. *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.–Houston [14th Dist.] 2005, no pet.). An appellate court has no duty—or even right—to perform an independent review of the record and applicable law to determine whether there was error. *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.–El Paso 2007, no pet.). Were we to do so, we would be abandoning our role as neutral adjudicators and become an advocate for that party. *Id.*

Here, Niranjan presents a brief conclusory argument for the proposition that the trial court abused its discretion in refusing to admit Exhibit 14.[2] His entire argument for this specific exhibit consists of one paragraph and is intermingled with his arguments regarding Exhibit 13. Niranjan does not provide any citations to the record, any substantive legal analysis, or any citations to authority in support of his complaint specific to Exhibit 14. *See Sweed v. City of El*

---

[2] Niranjan's argument regarding Exhibit 14 was that the "trial court abused its discretion in denying admission of the party opponent statements found in Exhibit 13 and 14." Further, he stated that he "was harmed as a result of this by the above improper rulings and judgment."

*Paso*, 195 S.W.3d 784, 786 (Tex. App.–El Paso 2006, no pet.) (stating that "merely uttering brief conclusory statements" is not a discussion of the facts and authorities relied upon contemplated by Rule 38). In the absence of any legal analysis, citations to the record, and citations to appropriate authorities, Niranjan presents nothing for our review regarding Exhibit 14. *See WorldPeace*, 183 S.W.3d at 460; *Med. Specialist Grp.*, 171 S.W.3d at 732.

Accordingly, we overrule Niranjan's fourth issue.

### PARENTING COUNSELING AND THERAPY

In his sixth issue, Niranjan contends that the trial court abused its discretion by ordering that his periods of possession of A.G. be contingent upon ongoing counseling.

## Applicable Law

A trial court has broad discretion to fashion the terms of a decree related to custody, visitation, and possession. *In re Doe 2*, 19 S.W.3d 278, 281 (Tex. 2000); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re Marriage of Swim*, 291 S.W.3d 500, 504 (Tex. App.—Amarillo 2009, no pet.). We review a trial court's rulings on conservatorship and visitation under an abuse of discretion standard. *Newberry v. Newberry*, 351 S.W.3d 552, 558 (Tex. App.—El Paso 2011, no pet.). A trial court abuses its discretion when it acts without regard to any guiding rules or principles. *Downer*, 701 S.W.2d at 241-42. When determining issues related to conservatorship or possession of and access to the child, the best interest of the child is the primary consideration. TEX. FAM. CODE ANN. § 153.002 (West 2014); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003); *In re Marriage of Swim*, 291 S.W.3d at 505.

A trial court may place conditions on a parent's access to a child, such as supervised visitation, when it is in the child's best interest. *In re A.G.*, 531 S.W.3d 329, 333 (Tex. App.–Houston [14th Dist.] 2017, no pet.). However, the terms of an order that imposes restrictions or limitations on a parent's right to possession of or access to a child may not exceed those that are required to protect the best interests of the child. TEX. FAM. CODE ANN. § 153.193(West 2014). The Texas Family Code also provides that a court may order a party to participate in counseling with a mental health professional "[i]f the court finds at the time of a hearing that the parties have a history of conflict in resolving an issue of conservatorship or possession of or access to the child. . . ." *Id.* § 153.010 (a)(West 2014); *see Brook v. Brook*, 865 S.W.2d 166, 174 (Tex. App.—Corpus Christi 1993), *aff'd*, 881 S.W.2d 297 (Tex. 1994). Further, a court shall consider

the commission of family violence or sexual abuse in determining whether to deny, restrict, or limit the possession of a child by a parent who is appointed as a possessory conservator. TEX. FAM. CODE ANN. § 153.004(c) (West Supp. 2017).

**Analysis**

First, we consider Niranjan's argument that the trial court's oral pronouncement regarding his participation in counseling and therapy differed from the divorce decree, and that there was no request that his counseling be a prerequisite to possession of or access to the child. A judgment is rendered when the decision is officially announced either orally in open court or by written memorandum filed with the clerk. *Samples Exterminators v. Samples*, 640 S.W.2d 873, 875 (Tex. 1982); *Bakali v. Bakali*, 830 S.W.2d 251, 254 (Tex. App.—Dallas 1992, no writ). Until thirty days after the judgment is signed, the trial court has plenary power to vacate, modify, correct, or reform its judgment at any time before it becomes final. TEX. R. CIV. P. 329b(d); *Mesa Agro v. R.C. Dove & Sons*, 584 S.W.2d 506, 508 (Tex. Civ. App.—El Paso 1979, writ ref'd n.r.e.). During this period, the trial court's power to modify its judgment is virtually absolute. *Garza v. Serrato*, 671 S.W.2d 713, 714 (Tex. App.—San Antonio 1984, no writ). Before the trial court signs a judgment, it "can change the decision previously announced without any formal order setting it aside." *Kostura v. Kostura*, 469 S.W.2d 196, 198 (Tex. Civ. App.—Dallas 1971, writ ref'd n.r.e.).

In its oral ruling, the trial court ordered that Niranjan participate in counseling and therapy. During the post-trial hearing to determine, among others, possession and access, Smita requested that Niranjan not be able to exercise visitation with A.G. if he did not participate or continue in counseling and therapy. In the decree of divorce, the trial court added a stipulation that Niranjan not exercise possession of nor access to A.G. if he failed to initiate and maintain regular participation in parenting counseling and therapy. Because the trial court had the power to modify its oral ruling and there was a request that Niranjan's possession of and access to A.G. be contingent on his participation in counseling and therapy, the trial court did not abuse its discretion in rendering its written judgment. *See* TEX. R. CIV. P. 329b(d); *Garza*, 671 S.W.2d 714; *Mesa Agro*, 584 S.W.2d at 508; *Kostura*, 469 S.W.2d at 198.

Finally, Niranjan contends that the requirement that he participate in counseling was an unconstitutional interference and restriction upon his parental rights, citing *Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). In the decree of divorce, the trial court

11

found that parenting counseling and therapy for Niranjan was in the child's best interest.  The trial court also found that:

> 5.  Niranjan Gadekar has engaged in [the] emotional abuse of the child, including the intentional use of abusive physical force against his wife, Smita Zankar within a two-year period preceding the filing of this suit, which conduct gives rise to concerns about his future conduct towards the mother Smita Zankar and the child.
>
> 6.  Niranjan Gadekar's conduct undermined and adversely affected, and is likely to continue to undermine and adversely affect, any effective relationship with the mother Smita Zankar that would support effective co-parenting or any positive and supportive relationship with the child that would be appropriate for effective parenting of the child.
>
> 7.  Niranjan Gadekar should be ordered to participate in regular counseling, which regular participation in counseling should be a condition precedent to exercise of possession of or access to the child.

Here, the trial court made a specific finding that Niranjan engaged in emotional abuse of the child.  The evidence showed that Niranjan refused to (1) participate in or permit A.G. to participate in school activities, such as neglecting to provide culturally appropriate clothing and food for her preschool's culture day; (2) administer prescribed medication to the child; and (3) allow Smita to talk to A.G. when he and the child encountered Smita during his time of possession.  The evidence also included video recordings showing Niranjan interrogating A.G., endlessly asking her why she no longer ran to him from school or why she would not come to him at school.  Mark Foster, Ph.D., a licensed psychologist, stated that it was inappropriate for Niranjan to question A.G. in that manner, and that he was very concerned.  According to Foster, A.G. appeared to be very uncomfortable and Niranjan persisted in questioning her, despite the fact that she was clearly uncomfortable.  Foster stated that if this represented the way Niranjan treated A.G., he could understand why A.G. was distant towards Niranjan.

The trial court also found that Niranjan engaged in a history and pattern of abuse against Smita and his former wives and, specifically, intentional use of abusive physical force against Smita.  At trial, all three of Niranjan's wives testified regarding his abuse of them.  According to Smita, Niranjan forced her to have sex with him, choking her until she acquiesced, and said that resistance "turned him on" and that if she said "no," he raped her.  She also testified that he refused to allow her enough food to eat during the day, denied basic necessities and medical care for A.G., constantly belittled and denigrated her, and threatened her if she ever returned to India.

12

From this evidence, the trial court did not abuse its discretion in ordering Niranjan to attend parenting counseling and therapy before exercising possession of or access to the child. *See* TEX. FAM. CODE ANN. § 153.010(a), 153.004(c). Further, Niranjan's reliance on ***Troxel*** is unsound. The ***Troxel*** case involved grandparents attempting to obtain visitation of their grandchildren based on a state's nonparent visitation statute. *See **Troxel***, 530 U.S. at 60–61, 120 S. Ct. at 2057–58. It did not involve the possession of or access to a child of parents who were divorcing. Nor does ***Troxel*** encompass the policy of this State, that when determining issues related to conservatorship or possession of and access to the child, the best interest of the child is the primary consideration. *See* TEX. FAM. CODE ANN. § 153.002; ***In re M.S.***, 115 S.W.3d at 547; ***In re Marriage of Swim***, 291 S.W.3d at 505. Accordingly, the trial court did not abuse its discretion in placing conditions on Niranjan's access to A.G. if it determined that such conditions were in the child's best interest. *See **In re A.G.***, 531 S.W.3d at 333.

Accordingly, we overrule Niranjan's sixth issue.

## CHILD SUPPORT

In his seventh issue, Niranjan argues that the trial court abused its discretion in awarding child support above the guidelines.

### Applicable Law

"A court's order of child support will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion." ***Worford v. Stamper***, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles. ***Worford***, 801 S.W.2d at 109; ***Downer***, 701 S.W.2d at 241–42. The court may order either or both parents to support a child in the manner specified by the order. TEX. FAM. CODE ANN. § 154.001 (West Supp. 2017). In other words, each party has a duty to support his or her minor child. ***Villasenor v. Villasenor***, 911 S.W.2d 411, 419 (Tex. App.—San Antonio 1995, no writ). The duty to support a child is not limited to a parent's ability to pay from current earnings, but also extends to his or her financial ability to pay from any and all sources that might be available. ***In re Striegler***, 915 S.W.2d 629, 638 (Tex. App.—Amarillo 1996, writ denied); ***Roosth v. Roosth***, 889 S.W.2d 445, 455 (Tex. App.—Houston [14th Dist.] 1994, writ denied); ***Musick v. Musick***, 590 S.W.2d 582, 586 (Tex. Civ. App.—Tyler 1979, no writ). In assessing child support, the trial court must calculate net

13

resources for the purposes of determining child support liability. TEX. FAM. CODE ANN. § 154.062(a), (b) (West Supp. 2017); *Newberry v. Bohn-Newberry*, 146 S.W.3d 233, 236 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

**Analysis**

At the post-trial hearing, Smita offered an exhibit into evidence showing that in 2015, Niranjan earned approximately $98,823.20, that his net resources for purposes of calculating child support were $6,041.62 per month, and that the monthly child support should be $1,208.32. Niranjan testified during trial that he was unemployed because of "all these court issues and all these visits." He also stated that he could not "keep [his] job" and decided that A.G. was more important. Thereafter, the trial court ordered that Niranjan pay child support in the amount of $1,208.32 per month. In its findings of fact, the trial court found that (1) Niranjan's most recent salary and income, and current and prospective earning capacity, were the same or similar, (2) Niranjan had the ability to contribute to the support of the child, and (3) Niranjan had financial resources available from which child support could be paid.

In his brief, Niranjan does not argue that the amount of child support is calculated incorrectly, but contends that the trial court abused its discretion in ordering child support without a finding that he was intentionally unemployed or underemployed, and that he should have been ordered to pay child support as if he were unemployed, or lacked income, citing Section 154.068(a) of the Texas Family Code. Section 154.066(a) gives a trial court discretion to set child support based on the obligor's earning capacity where "the actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or underemployment." TEX. FAM. CODE ANN. § 154.066(a) (West 2014); *Iliff v. Iliff*, 339 S.W.3d 74, 79-80 (Tex. 2011). The trial court made no finding that Niranjan was intentionally unemployed or underemployed as required by *Iliff*. However, Niranjan does not refer to Section 154.066(a), only to the case law requiring such finding, appearing to conflate intentional unemployment and underemployment with Section 154.068. Section 154.068(a) provides that in the absence of a party's resources, the court shall presume that the party has income equal to the federal minimum wage for a forty-hour week to which the support guidelines may be applied. TEX. FAM. CODE ANN. § 154.068(a) (West Supp. 2017).

Here, we have no absence of Niranjan's resources. The evidence shows that shortly before trial, he was employed and had net resources of $6,041.62. There was no evidence that he

could not obtain employment after trial. Moreover, the evidence shows that he had other sources of financial ability in which to pay child support. *See In re Striegler*, 915 S.W.2d at 638; *Roosth*, 889 S.W.2d at 455; *Musick*, 590 S.W.2d at 586. He had treasury bonds worth $40,000.00, and was awarded financial accounts as his separate property totaling approximately $300,000.00. Because there was evidence of Niranjan's financial ability to pay child support from multiple sources, the trial court did not abuse its discretion in ordering him to pay child support in amount of $1,208.32 per month.

Accordingly, we overrule Niranjan's seventh issue.

## JOINT MANAGING CONSERVATOR

In his first issue, Niranjan argues that the evidence was legally insufficient to support the jury's finding that he should not be appointed joint managing conservator.

### Standard of Review

In a jury trial, a party is entitled to a verdict by the jury and the court may not contravene a jury verdict on the issue of the appointment of a sole managing conservator. TEX. FAM. CODE ANN. § 105.002(c)(1)(A) (West Supp. 2017). Instead, the jury's verdict is reviewed for legal sufficiency. *See Lenz v. Lenz*, 79 S.W.3d 10, 17 (Tex. 2002) (applying legal sufficiency standard to review of jury verdict).

In considering a legal sufficiency challenge, we review all the evidence in the light most favorable to the trial court's judgment and indulge every reasonable inference in its favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit any favorable evidence if a reasonable factfinder could and disregard any contrary evidence unless a reasonable factfinder could not. *Id.* at 822, 827. We may only sustain a legal sufficiency challenge when (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the sole evidence offered to prove a vital fact, (3) the sole evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes the opposite of a vital fact. *Id.* at 810. More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair minded jurors to differ in their conclusions. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006) (per curium). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Reeder v. Wood Cty.*

15

***Energy, L.L.C.***, 320 S.W.3d 433, 441 (Tex. App.—Tyler 2010), *aff'd in part and rev'd in part*, 395 S.W.3d 789 (Tex. 2012). The jury is the sole judge of the witnesses' credibility; it may choose to believe one witness over another. ***City of Keller***, 168 S.W.3d at 819–20. We must assume that jurors resolved all conflicts in accordance with their verdict if reasonable human beings could do so. ***Id.***

## Applicable Law

The best interest of the child shall always be the primary consideration in determining the issues of conservatorship. TEX. FAM. CODE ANN. § 153.002. It is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child. ***Id.*** § 153.131(b) (West 2014). A finding of a history of family violence involving the parents of a child removes the presumption. ***Id.*** Evidence of the intentional use of abusive physical force by a party directed against the party's spouse, a parent of the child, or any person younger than eighteen years of age committed within a two-year period preceding the filing of the suit shall be considered in determining whether to appoint a party as a sole or joint managing conservator. ***Id.*** § 153.004(a) (West Supp. 2017). In making an appointment of sole or managing conservator, the jury shall consider whether a party engaged in a history or pattern of family violence. ***Id.*** § 153.005(c)(1) (West Supp. 2017).

In determining whether an appointment of the parents as joint managing conservators is warranted, the trier of fact should consider the following factors:

(1) whether the physical, psychological, or emotional needs and development of the child will benefit from the appointment of joint managing conservators;
(2) the ability of the parents to give first priority to the welfare of the child and reach shared decisions in the child's best interest;
(3) whether each parent can encourage and accept a positive relationship between the child and the other parent;
(4) whether both parents participated in child rearing before the filing of the suit;
(5) the geographical proximity of the parents' residences;
(6) if the child is twelve years of age or older, the child's preference, if any, regarding the person to have the exclusive right to designate the primary residence of the child; and
(7) any other relevant factor.

***Id.*** § 153.134(a) (West 2014).

## Analysis

Here, the evidence showed that Niranjan committed family violence against Smita, that the child would not benefit from the appointment of joint managing conservators, that the parents

16

could not reach shared decisions in the child's best interest, and that the parents could not encourage and accept a positive relationship between the child and the other parent.

First, the evidence shows that Niranjan committed family violence against Smita. Family violence is defined as "an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault." *Id.* § 71.004 (West Supp. 2017). Smita testified that Niranjan demanded sex from her after A.G.'s birth and before the doctor recommended the resumption of sexual relations. She stated that he forced her to have sex with him, choking her until she acquiesced, stating that "resistance turned him on." Smita also said that Niranjan told her that if she said "no," he would rape her and physically forced her to have sex. From this evidence, the jury could have found that Niranjan committed family violence and considered this evidence in determining whether Niranjan should be appointed joint managing conservator. *See id.* § 153.005(c)(1).

The jury could have also found that A.G.'s physical development would not benefit from the appointment of Niranjan as a joint managing conservator. Niranjan failed to provide, seek, or maintain proper medical care for A.G. According to Smita, Niranjan refused to seek medical care when A.G.'s bug bite turned into a boil, and take A.G. to wellness checkups, instead forcing Smita to take A.G. to the county health clinic for routine vaccinations. Smita stated that after she found a job in the United States, she obtained insurance and took A.G. to a pediatrician when she was fourteen months old.

Niranjan refused to follow the advice of A.G.'s primary physician, pediatric dermatologist, and allergist. According to Smita, A.G.'s primary physician recommended that A.G. take an antihistamine, but Niranjan refused. A.G.'s pediatric dermatologist recommended steroidial creams and Cetaphil moisturizer for A.G.'s eczema, told the parents not to use perfumes or detergents and soaps containing perfumes, and stated that A.G. needed to take only short baths. According to Smita, Niranjan used olive oil to moisturize A.G.'s skin, stating that Cetaphil was too expensive. She also stated that Niranjan put perfumes on A.G. and forced A.G. to take long baths, believing that A.G. needed to soak in water for at least twenty minutes. According to Smita, Niranjan's actions bothered A.G.'s eczema and caused it to "flare up."

17

In the allergist's records, he stated that he agreed with the primary physician's recommendation of daily Zyrtec and was "unsure why dad has been so reluctant" in administering this medication. Smita also testified that after A.G.'s allergist tested A.G. for allergies, she broke out in hives. Niranjan blamed the allergist for testing A.G. and argued with the physician. According to Smita, the allergist believed that Niranjan was "attacking him," and subsequently released A.G. from his care. Further, Niranjan refused to pay an additional ninety cents to add flavoring to A.G.'s antibiotic, stating that he was following "court orders." The evidence also showed that when Smita returned to their house in the United States, after A.G.'s birth, Niranjan refused to buy a crib or other basic necessities for A.G., including toys, pillows, or a rattle.

The jury could have found that the parents could not reach shared decisions in A.G.'s best interest. After the parties separated, Niranjan and Smita disagreed about enrolling A.G. in day care, choosing the day care, and the child's extracurricular activities. Niranjan also refused to participate or allow A.G. to participate in activities at her day care, and refused to provide lunch or necessities on the ending day of his possession.

Finally, the jury could have found that A.G.'s emotional development would not benefit from the appointment of Niranjan as joint managing conservator. The evidence shows that during two videotapes taken by Niranjan, he did not offer comfort to A.G. who was crying during a change of possession, and relentlessly questioned A.G. about her refusal to "run" to him when he picked her up from day care. In the first videotape, Niranjan allowed A.G. to cry and scream for almost eleven minutes, offering no comfort or help, before picking her up and taking her to his car. In the second videotape, Niranjan's intense questioning caused A.G. to eventually curl up in a fetal position on the couch, turning her back on her father. When A.G. jumped up and ran to Niranjan, she asked him to help her with her hair clip that was hurting her. Niranjan refused, and told her that he would help her after she answered his questions. A.G. was four years old at the time.

The evidence above rebuts the presumption that the appointment of the parents as joint managing conservators is in A.G.'s best interest. *See id.* § 153.131(b). Thus, the evidence is legally sufficient to support the finding that Smita be sole managing conservator of A.G. *See Cazarez*, 937 S.W.2d at 450; *Reeder*, 320 S.W.3d at 441. Accordingly, we overruled Niranjan's first issue.

## PROPERTY DIVISION

In his second and eighth issues, Niranjan argues that the jury abused its discretion in dividing the community property estate because the ultimate division was inequitable. Further, he contends that the evidence is legally insufficient to support a finding that the Indian assets were Smita's separate property.

**Standard of Review**

In a decree of divorce, a court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party. TEX. FAM. CODE ANN. § 7.001(West 2006). We review a trial court's division of property under an abuse of discretion standard. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied); *see also Garza v. Garza*, 217 S.W.3d 538, 548 (Tex. App.—San Antonio 2006, no pet.). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *Garza*, 217 S.W.3d at 549; *Moroch*, 174 S.W.3d at 857. It is this court's duty to consider every reasonable presumption in favor of the proper exercise of discretion by the trial court in dividing the community estate. *Loaiza v. Loaiza*, 130 S.W.3d 894, 899 (Tex. App.–Fort Worth 2004, no pet.) (citing *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981)). Moreover, we should reverse a court's division of property only if the error materially affects the court's just and right division of the property. *Henry v. Henry*, 48 S.W.3d 468, 475 (Tex. App.—Houston [14th Dist.] 2001, no pet.). However, once reversible error affecting the "just and right" division of the community estate is found, an appellate court must remand the entire community estate for a new division. *Sheshtawy v. Sheshtawy*, 150 S.W.3d 772, 780 (Tex. App.—San Antonio 2004, pet. denied) (quoting *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985)).

**Applicable Law**

A trial court is charged with dividing the marital estate in a "just and right" manner. TEX. FAM. CODE ANN. § 7.001; *Gardner v. Gardner*, 229 S.W.3d 747, 756 (Tex. App.—San Antonio 2007, no pet.). In dividing the marital estate, the trial court is not required to divide it equally, but may order an unequal division when a reasonable basis exists for doing so. *Murff*, 615 S.W.2d at 698–99; *Gardner*, 229 S.W.3d at 756; *Prague v. Prague*, 190 S.W.3d 31, 41 (Tex. App.—Dallas 2005, pet. denied). Factors to consider in dividing the estate include the parties' capacities and abilities; benefits the party not at fault would have derived from continuation of

the marriage; business opportunities; education; the parties' physical conditions; the parties' financial conditions and obligations; the size of the separate estates; the nature of the property; and disparities in earning capacities and incomes. *See Murff*, 615 S.W.2d at 699. The circumstances of each marriage dictate what factors should be considered in division of the marital estate. *Young v. Young*, 609 S.W.2d 758, 761 (Tex. 1980).

Property possessed by either spouse during or at the dissolution of the marriage is presumed to be community property, but the presumption may be rebutted by clear and convincing evidence. TEX. FAM. CODE ANN. § 3.003(a) (West 2006); *Cockerham v. Cockerham*, 527 S.W.2d 162, 167 (Tex. 1975). Any doubt as to the character of property should be resolved in favor of the community estate. *Sink v. Sink*, 364 S.W.3d 340, 345 (Tex. App.—Dallas 2012, no pet.). In the context of a divorce proceeding, characterization of property is determined by the time and circumstances of its acquisition. *Rivera v. Hernandez*, 441 S.W.3d 413, 420 (Tex. App.–El Paso 2014, pet. denied). Separate property consists of all the spouse's property, both real and personal, that is owned or claimed before marriage, and that is acquired after marriage by gift, devise, or descent. TEX. CONST. art. XVI, § 15. Community property consists of property, other than separate property, acquired by either spouse during marriage. TEX. FAM. CODE ANN. § 3.002 (West 2006). The burden of proof necessary to establish that property is separate property is clear and convincing evidence. *Id.* § 3.003(b). Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007 (West 2014).

As a general rule, the clear and convincing standard is not satisfied by testimony that property possessed at the time the marriage is dissolved is separate property when that testimony is contradicted or unsupported by documentary evidence tracing the asserted separate nature of the property. *Graves v. Tomlinson*, 329 S.W.3d 128, 139 (Tex. App.–Houston [14th Dist.] 2010, pet. denied).

**Separate Property—Indian Assets**

In his eighth issue, Niranjan argues that the "evidence is devoid of anything to support the jury's findings" regarding Smita's Indian assets and her Westend Riverview, Pune apartment. The jury determined that eleven financial accounts were Smita's separate property, and that an

apartment in India, described as the "Westend Riverview, Pune apartment," was also her separate property.

However, Niranjan contends that the bank accounts determined to be Smita's separate property do not correlate to the account numbers listed in the jury charge. Smita testified that Exhibit 11 contained financial statements for her assets in India as of the date of the marriage. More specifically, the ICICI, CitiBank, and State Bank of India savings accounts in the exhibit reflected the same bank account numbers as in the jury charge. Smita also testified that Exhibit 12 included financial statements for her assets in India as of the date of her marriage, including accounts from the State Bank of India and ICICI, all of which reflect the same bank account numbers as in the jury charge. Finally, she testified that the list of accounts in Exhibit 13A reflected the value of her financial assets in India as of the date of her marriage. All of these accounts in Exhibit 13A match the account numbers and descriptions in the jury charge.

Moreover, Niranjan did not contradict any of Smita's testimony regarding her financial assets in India as of the date of the marriage. Nor does he refer this court to any contrary evidence other than noting that some of the account numbers do not correlate to the account numbers in the jury charge.

Regarding Niranjan's argument that Smita's Westend Riverview, Pune apartment was not mentioned in the record, Smita testified that she bought an apartment in India before her marriage. She described it as her "Aundh" apartment in her testimony. However, the Westend Riverview address was listed on her separate property financial accounts as her Indian address and contained the notation "Aundh" in the address. Niranjan did not offer any contradictory evidence regarding Smita's Indian apartment, nor does he refer this court to any contrary evidence.

From this evidence, Smita's testimony regarding her Indian financial assets and apartment was "clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law." *See Monroe v. Monroe*, 358 S.W.3d 711, 718 (Tex. App.—San Antonio 2011, pet. denied) (quoting *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex.1990)). Moreover, Smita's testimony "seeking to overcome the community property presumption need not be corroborated to meet the clear and convincing standard." *Id.* (quoting *Pace v. Pace*, 160 S.W.3d 706, 714 (Tex. App.—Dallas 2005, pet. denied).). Thus, the jury could determine that Smita's

uncontradicted testimony constituted clear and convincing evidence necessary to overcome the community property presumption, and establish that the Indian financial assets and Indian apartment listed in the jury charge were her separate property.

## Community Property Division

In his second issue, Niranjan states that "[i]nitially, it must be clear that [he] disputes the valuation of the community property estate and disputes the inclusion of the treasury bonds in the community property pool." As previously noted, Rule 38.1 of the Texas Rules of Appellate Procedure sets forth what must be included in an appellant's brief. *See* TEX. R. APP. P. 38.1. Rule 38.1(i) requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." *See id*. The appellate court has no duty to brief issues for an appellant. *Huey*, 200 S.W.3d at 854. The failure to provide appropriate record citations or a substantive analysis waives an appellate issue. *WorldPeace*, 183 S.W.3d at 460 (holding that failure to offer argument, citations to record, or citations to authority waives issue on appeal); *Med. Specialist Grp., P.A.*, 171 S.W.3d at 732 (same); *see also Fredonia State Bank*, 881 S.W.2d at 284–85 (holding appellate court has discretion to deem points of error waived due to inadequate briefing). Appellate courts must construe briefing requirements reasonably and liberally, but a party asserting error on appeal still must put forth some specific argument and analysis showing that the record and the law support its contentions. *San Saba Energy, L.P.*, 171 S.W.3d at 338.

Here, beyond one sentence in his brief and one citation to an exhibit in the record, Niranjan does not provide any argument or any citations to authority in support of this complaint. In the absence of any legal analysis and citations to appropriate authorities, Niranjan presents nothing for our review regarding his complaints about valuation and inclusion of the treasury bonds.

Next, Niranjan contends that the ultimate division of the community property is inequitable, or "close to a 81/19 split." During a post trial hearing, the trial court stated that it awarded all of the community property retirement accounts to Smita, and all of the community property liquid, or cash, accounts to Niranjan. The trial court said that its division of the community estate would be a "very" rough 50/50 percent division. The trial court also stated that it understood Smita would be "at a little bit of a disadvantage" because her assets would be subject to taxes and penalties. From the evidence produced at trial, the jury charge, and the trial

court's findings of fact, Smita was awarded approximately $271,835.86 in community property retirement and individual retirement accounts, and Niranjan was awarded approximately $231,037.11 in community property cash or savings accounts. Further, the trial court awarded Smita an additional $19,293.49 in community property brokerage accounts that were not submitted to the jury or previously divided by the court. According to the trial court, it awarded these community property brokerage accounts to Smita in order to "make up the difference, because [Smita is] getting before-tax dollars, that there will be taxes and penalties if she wants to access those."

However, Niranjan contends that when the trial court's award of attorney's fees in the amount of $112,000.00 to Smita's counsel is taken into consideration, the ultimate division of community property is inequitable. Attorney's fee awards in divorce cases are reviewed for an abuse of discretion. *Murff*, 615 S.W.2d at 699 (citing *Carle v. Carle*, 149 Tex. 469, 234 S.W.2d 1002, 1005 (1950)). In a divorce case, a trial court may award attorney's fees as part of a just and right division of the marital estate. *Mandell v. Mandell*, 310 S.W.3d 531, 541 (Tex. App.– Fort Worth 2010, pet. denied). A "decree that the husband pay all of the wife's attorney's fees may be to award him less of the community estate than that awarded to the wife, but that alone does not condemn it." *See Carle*, 234 S.W.2d at 1005. "The attorney's fee is but a factor to be considered by the court in making an equitable division of the estate, considering the conditions and needs of the parties and all of the surrounding circumstances." *See id.*

Here, the trial court awarded Smita's counsel a judgment in the amount of $112,000.00 for attorneys' fees, expenses, and costs, and ordered Niranjan to pay said fees, expenses, and costs to Smita's counsel. The award of attorney's fees did not appear in the factors that the trial court considered in a "just and right" division of the community estate in its findings of fact. Nor did it appear as an item in the list of community property or in either parties' separate property. Instead, it appeared in the trial court's "other" findings of fact.

The failure to list the attorney's fees as "property" in the list of property awarded to the wife is no indication that they were not considered in the division, only that it was not considered "property." *See Murff*, 615 S.W.2d at 699. At the post-trial hearing, Smita's counsel testified regarding his attorney's fees, noting that this case involved three temporary orders, five changes of counsel for Niranjan, three or four scheduling orders, a five day jury trial, and numerous settlement attempts. Moreover, Smita's counsel said, he had "to expend innumerable hours in

this case defending [Smita] against spurious, unfounded, bad faith motions and arguments." From this evidence, the trial court did not abuse its discretion in awarding Smita's counsel attorney's fees under the circumstances of this case. *See **id.***

Accordingly, we overrule Niranjan's second and eighth issues.

## ADDITIONAL ISSUES

In his pro se reply brief to the Amicus Attorney's brief, Niranjan identified "other issues of concern" that he wanted to present to this Court. He argued that these "issues" had a direct bearing on his ability to respond to Smita's and the Amicus's briefs, and raised questions about the trial. Niranjan's other "issues" include: (1) an incorrect reporter's record that did not correctly reflect the testimony or his objections; (2) not being allowed to present his case; (3) not being allowed or given the opportunity to testify about anything later than August 2012; (4) being prevented from admitting two exhibits containing hundreds of videotapes and thousands of pictures; (5) being accused of using outside help during trial and having a bailiff placed behind him while presenting his case; and (6) not being allowed to present his parents or sister to testify by videotape or cross examine the Amicus Attorney.

Niranjan also contended that the trial court erred in (1) allowing a psychologist to testify who was not designated as an expert witness before the appropriate deadline; (2) allowing a psychologist to testify and produce his records even though the records were incomplete; (3) refusing to admit Niranjan's inventory and appraisement after first admitting it; (4) refusing to admit a correct summary of the community property; (5) awarding him less than standard possession of A.G.; and (6) treating him unfairly by putting undue and unreasonable pressure on him to present his witnesses with "very little notice."

An appellant may file a reply brief addressing any matter in the appellee's brief. TEX. R. APP. P. 38.3. However, the rules of appellate procedure do not allow appellant to raise a new issue that was not discussed in his original brief, even if the new issue is raised in response to a matter in the appellee's brief. *Yeske v. Piazza Del Arte, Inc.*, 513 S.W.3d 652, 672 n.5 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Dallas Co. v. Gonzalez*, 183 S.W.3d 94, 104 (Tex. App.—Dallas 2006, pet. denied) ("A reply brief may not be used to raise new issues."); *Lopez v. Montemayor*, 131 S.W.3d 54, 61 (Tex. App.—San Antonio 2003, pet. denied) (holding arguments raised for the first time in appellant's reply brief were not properly before the court).

To allow an appellant to raise new issues in a subsequent brief would vitiate the briefing requirements of Texas Rule of Appellate Procedure 38.1. *See* TEX. R. APP. P. 38.1(f) (An appellant's brief "must state concisely all issues or points presented for review.").

Accordingly, we do not consider Niranjan's arguments raised for the first time in a reply brief. *See*, *e.g., Anderson Producing Inc. v. Koch Oil Co.*, 929 S.W.2d 416, 424 (Tex. 1996); *Salas v. LNV Corp.*, 409 S.W.3d 209, 219 n.6 (Tex. App.–Houston [14th Dist.] 2013, no pet.).

## DISPOSITION

Having overruled all of Niranjan's issues, we ***affirm*** the trial court's judgment.

BRIAN HOYLE
Justice

Opinion delivered May 31, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 31, 2018**

**NO. 12-16-00209-CV**

**NIRANJAN GADEKAR,**
Appellant
V.
**SMITA ZANKAR,**
Appellee

Appeal from the 442nd District Court
of Denton County, Texas (Tr.Ct.No. 2012-40948-362)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellant, **NIRANJAN GADEKAR,** for which execution may issue, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*